**Dr. N. Jay ROGERS et al., Petitioners,**

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Respondent.**

**Civ. No. 6590.**

United States District Court,
E. D. Texas,
Beaumont Division.
July 27, 1970.

Robert Q. Keith, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for petitioners.

Marian Halley, Equal Employment Opportunity Commission, Washington, D. C., for respondent.

## MEMORANDUM OPINION
## AND ORDER

FISHER, Chief Judge.

Petitioners have brought this action pursuant to § 710(c) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–9(c), seeking to have the Court modify a demand by the Equal Employment Opportunity Commission for production of certain evidence. The Commission, by cross petition, seeks to enforce its demand, which was issued in connection with an investigation of a charge of unlawful employment practices.

Petitioners are optometrists doing business as "Texas State Optical." On or about April 11, 1969, Mrs. Josephine Chavez filed with the Commission a verified charge of employment discrimination against Texas State Optical. The charge stated in full:

"The above company has discriminated against me because of my national origin Spanish Surnamed American by:

a. Terminated me from my job without a reason. I was the only Spanish surnamed American employed with seven Caucasian females who abused me. The manager told me my work was allright but he had to let me go because of friction.

b. segregated the patients."

The Commission commenced an investigation of the charge, serving a copy thereof on Petitioners on May 9, 1969. The formal demand was served later when the Commission became dissatis-

fied with the extent of voluntary compliance by Petitioners. In this action Petitioners complain of overbreadth in that demand.

■ Petitioners have also filed herein certain interrogatories propounded to the Commission pursuant to Rule 33, Fed.R.Cvi.Proc., to which interrogatories the Commission has filed its objections. In this connection, Petitioners have asked the Court to determine the merits of the underlying controversy. We agree with the Commission that § 710 provides only for a judicial test of the validity of an administrative subpoena, and Petitioners cannot at this stage of the administrative proceedings convert this action into an ordinary lawsuit for the purpose of employing the Court's discovery processes. Neither can the merits of the controversy be litigated in an enforcement proceeding such as the Commission's cross action. Accordingly, the Commission's objections to Petitioners' interrogatories are sustained.

The only issue properly before the Court is Petitioners' contention that the demand here in question is overbroad and should be limited. From oral argument it appears that the real dispute centers upon the items numbered 6 and 7 in the demand, which are set out in the margin.[1] These seek information pertaining to or contained in records of patients which are kept by Petitioners in the course of their business. Petitioners maintain that these matters are not relevant to the Commission's inquiry into the charge of unlawful employment practices. The Commission argues that it is entitled to this information because the complainant, Mrs. Chavez, has indicted Petitioners with having "segregated the patients" and that such a practice, though not directed against Mrs. Chavez, could "create an atmosphere that would adversely affect the terms and conditions of her employment" and thus have an effect that is proscribed by Title VII. The Court is not impressed by that argument.

■ The Commission is created by Title VII for the purpose of enforcing the prohibitions contained in that title. Section 706(a) sets out procedure for enforcement,

"Whenever it is charged in writing under oath by a person claiming to be aggrieved * * * that an employer * * * has engaged in an unlawful employment practice * * *. * * *"

"Unlawful employment practice" is defined by § 703.[2] Briefly summarized, the charges which the Commission is au-

---

1. "6. A written response to the following questions:

a. Does Texas State Optical instruct its employees at any of its Houston facilities to fill in Negro patients' applications for service with red ink or red pencil and to use black or blue ink or pencil for patients other than Negroes.

b. Has Texas State Optical ever so instructed its employees at any Houston facility or elsewhere?

c. Do Texas State Optical records of patients for service at its 306 Northline Mall, Houston, Texas, facility now contain, or have they within the last two years contained, any application filled out in red ink or pencil?

d. If the answer to 'c' is 'yes,' why were they filled out in red?

"7. Respondent Texas State Optical is to make available to a representative of the Equal Employment Opportunity Commission its records of patients' applications for service at its 306 Northline Mall, Houston, Texas, facility for purposes of inspection."

2. Section 703 reads, in pertinent part:

"(a) It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

thorized to investigate comprehend discriminatory hiring practices or classification of employees in such a manner as adversely to affect their status because of race or ethnic origin. Accepting *arguendo* the Commission's contention that if Petitioners in fact "segregated the patients" then such a practice might be so offensive to Mrs. Chavez's sensibilities as to make her uncomfortable in her job, there still is no showing that she is "aggrieved" in the sense contemplated by § 706(a), i. e., by the employer's pursuit of an "unlawful employment practice" within § 703.

Discrimination on the basis of race or ethnic origin directed against patrons of certain places of public accommodation is contrary to public policy and has been proscribed by the Congress in the Civil Rights Act of 1964. Provisions respecting these matters and procedure for enforcement of the prohibitions and for redress by persons aggrieved are contained in Title II of that Act, 42 U.S.C. § 2000a *et seq.* Title VII does not address itself to Petitioners' accommodation of their patients or patrons, and the matter is of no concern to the Commission.

Neither is Mrs. Chavez in a position to assert the legal rights of others who might patronize Texas State Optical. The cases relied upon by the Commission are not in point. Jenkins v. United Gas Corp., 400 F.2d 29 (5th Cir. 1968), involved a suit by a Negro employee to enjoin alleged violations of Title VII by his employer. The Court of Appeals held that the action could be deemed "a sort of class action" on behalf of fellow employees similarly situated. N. L. R. B. v. Tanner Motor Livery, Ltd., 349 F. 2d 1 (9th Cir. 1965), arose in the context of a labor dispute under § 7 of the National Labor Relations Act, 29 U.S.C. § 157, which guarantees to employees the right to engage in concerted activities for the purpose of mutual aid or protection. In that case the employees were seeking a determination by the National Labor Relations Board as to whether presenting a request or picketing by employees in support of nondiscriminatory hiring by their employer was protected activity under § 7. The Court of Appeals held that the Board had correctly determined that such activities are protected by the statute. The Commission's contention in the case at bar that an employee can claim the protection of Title VII because of the employer's discrimination against his customers is a wholly different proposition and one unsupported by authority. We reject it.

We must emphasize the failure of Mrs. Chavez's complaint in this regard to show that she is aggrieved in a manner contemplated by Title VII. As it has been explained to the Court, Mrs. Chavez claims that Petitioners afford their patients different treatment according to their ethnic origins. It is not alleged that, for instance, Mrs. Chavez is required or permitted to attend only to patients of a certain ethnic origin and not to others. Such a complaint might indicate a classification of employees such as is prohibited by § 703. That is not our case. Mrs. Chavez claims only that she is offended by the manner in which her former employers treated their customers.

Business records are not always privileged and may be subject to inspection by governmental agencies charged with administration and enforcement of a valid regulatory statute. However, such records are nonetheless private property, and due process requires at least a satisfactory showing that the matters sought to be produced are reasonably material to some subject within the legitimate scope of an administrative inquiry. It is always open to the employer to object to a demand on grounds of relevancy or overbreadth, and it is incumbent upon the Commission to show the Court that it is entitled to a compliance order. See Overnite Transportation Co. v. E. E. O. C., 397 F. 2d 368 (5th Cir. 1968). No such showing has been made by the Commission in this case. Accordingly we grant Petitioners' request for an order modifying the demand by striking therefrom the

items numbered 6 and 7. The Commission's cross petition for an order of compliance is denied insofar as those items are concerned. With respect to the other items of the demand, Petitioners are required to exercise good faith and to supply information desired by the Commission insofar as it exists. See Georgia Power Co. v. E. E. O. C., 295 F.Supp. 950 (N.D.Ga.1968), aff'd 412 F.2d 462 (5th Cir. 1969).

It is so ordered.