Dr. N. Jay ROGERS et al., Petitioners-
Appellees,

v.

**EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Respondent-Appellant.**

**No. 30651.**

United States Court of Appeals,
Fifth Circuit.

Dec. 21, 1971.

Rehearing and Rehearing En Banc
Denied Jan. 31, 1972.

Godbold, Circuit Judge, specially
concurred and filed opinion; Roney, Cir-
cuit Judge, dissented and filed opinion.

Marian Halley, Atty., Stanley P. Hebert, Gen. Counsel, E. E. O. C., Washington, D. C., Julia P. Cooper, Gen. Atty., Robert Nicholas, Asst. U. S. Atty., Beaumont, Tex., David Copus, E. E. O. C., Washington, D. C., for respondent-appellant.

Robert Q. Keith, C. M. Bradford, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for petitioners-appellees.

Before GOLDBERG, GODBOLD and RONEY, Circuit Judges.

GOLDBERG, Circuit Judge:

This Equal Employment Opportunity case comes to us in a preliminary and undefinitive posture. We are asked to limit at the threshold the investigative scope of the Equal Employment Opportunity Commission on the ground that the Commission seeks evidence of a discriminatory employment practice which is not proscribed by Title VII of the Civil Rights Act of 1964.[1] Judge Godbold, for reasons best expressed in his concurring opinion, permits the discovery. Though my justiciable interpretation of the acts charged differs from that of my Brother Godbold, I also sanction the discovery, because at this juncture I cannot be certain that the acts charged are not within the Act's proscriptions.

On April 11, 1969, Mrs. Josephine Chavez filed with the respondent EEOC, pursuant to Section 706(a) of Title VII, 42 U.S.C.A. § 2000e–5(a), a verified charge of employment discrimination against petitioners S. J. and N. Jay Rogers, who are optometrists doing business as "Texas State Optical." The charge stated in full:

> "The above company has discriminated against me because of my national origin Spanish surnamed American by:
>
> a. Terminated me from my job without a reason. I was the only Spanish surnamed American employed with seven Caucasian females who abused me. The manager told me my work was allright [sic] but he had to let me go because of friction.
>
> b. segregating the patients."

In May of 1969 the Commission commenced investigation of the charge, serving a copy of it on petitioners. Frustrated by unsuccessful efforts to secure voluntary production of materials considered relevant to its investigation, the Commission invoked its statutory authority and issued upon the petitioners a Demand for Access to Evidence.[2] In addition to information concerning Mrs. Chavez and other of the petitioners' employees, the Demand sought production of data pertaining to or contained in the patient applications which petitioners maintain in the course of their business. Within the twenty-day statutory period;[3]

---

1. 42 U.S.C.A. §§ 2000e to 2000e–15 (1964).

2. 42 U.S.C.A. § 2000e–8(a) provides:
   "In connection with any investigation of a charge filed under section 2000e–5 of this title, the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employ-

ment practices covered by this subchapter and is relevant to the charge under investigation."

3. 42 U.S.C.A. § 2000e–9(c) provides in pertinent part:
   "Within twenty days after the service upon any person charged under section 2000e–5 of this title of a demand by the Commission for the production of documentary evidence or for permission to examine or to copy evi-

petitioners filed in a federal district court a petition to set aside or modify the Demand, and the EEOC timely answered and cross-petitioned for enforcement. The district court granted partial enforcement of the Demand, denying the Commission's request for access to patient applications. Rogers v. EEOC, E. D.Tex.1970, 316 F.Supp. 422. The EEOC appeals the partial enforcement order [4] and contends that the district court should have granted the Commission access to these applications. The majority of this court is in agreement that the Demand for Access to Evidence against petitioners should be enforced in toto.

Before considering the district court's justifications for refusing enforcement of the Demand, I find it necessary to consider the interpretation which should be accorded Mrs. Chavez's complaint. Neither the district court nor the EEOC interpreted the complainant's charge of "segregating the patients" as alleging that "Mrs. Chavez is required or permitted to attend only to patients of a certain ethnic origin and not to others." Rogers v. EEOC, *supra*, 316 F.Supp. at 425. Such an interpretation, which Judge Godbold endorses, might very well be reasonable, but it is certainly neither compulsory nor compelling. This case was tried and the trial court's conclusion reached solely on the interpretation of the charge that petitioners discriminate among their clients on the basis of the patient's national origin. This is both a reasonable and a practical interpretation, and I prefer to come to grips with the fundamentals of this case as viewed by the claimant, the learned and distinguished trial judge, the Equal Employment Opportunity Commission, the briefs on appeal, and Judge Roney. Accordingly, for purposes of the merits of this appeal, I will treat the latter portion of Mrs. Chavez's charge, as the district court did, to mean only that petitioners afford their patients different treatment depending on their ethnic origins.

### I. Unlawful Employment Practice

On the basis of the above interpretation of the second portion of Mrs. Chavez's charge, the court below denied the Commission's Demand for access to the petitioners' patient applications because the EEOC had failed to show that Mrs. Chavez was a person "aggrieved" by an unlawful employment practice within the meaning of Section 703(a), 42 U.S.C.A. § 2000e-2(a). In the words of the trial court:

" . . . Accepting *arguendo* the Commission's contention that if Petitioners in fact 'segregated the patients' then such a practice might be so offensive to Mrs. Chavez's sensibilities as to make her uncomfortable in her job, there still is no showing that she is 'aggrieved' in the sense contemplated by § 706(a), i. e., by the employer's pursuit of an 'unlawful employment practice' within § 703." Rogers v. EEOC, *supra*, 316 F.Supp. at 425.

I disagree fundamentally with this position. While the district court may have viewed lightly the connection between the petitioners' alleged discrimination against its patients and Mrs. Chavez's sensibilities, I think that the

---

dence in conformity with the provisions of section 2000e-8(a) of this title, such person may file in the district court of the United States for the judicial district in which he resides, is found, or transacts business, and serve upon the Commission a petition for an order of such court modifying or setting aside such demand. . . . "

4. The district court's order modifying the Demand is a final, appealable order under 28 U.S.C.A. § 1291. Overnite Transportation Co. v. EEOC, 5 Cir. 1968,

397 F.2d 368, 369 n. 4; International Brotherhood of Electrical Workers, Local No. 5 v. United States EEOC, 3 Cir. 1968, 398 F.2d 248, cert. denied, 1969, 393 U.S. 1021, 89 S.Ct. 628, 21 L.Ed.2d 565. See also General Employment Enterprises, Inc. v. EEOC, 7 Cir. 1971, 440 F.2d 783; Graniteville Co. v. EEOC, 4 Cir. 1971, 438 F.2d 32; Bowaters Southern Paper Corp. v. EEOC, 6 Cir. 1970, 428 F.2d 799, cert. denied, 1970, 400 U.S. 942, 91 S.Ct. 241, 27 L.Ed.2d 246.

relationship between an employee and his working environment is of such significance as to be entitled to statutory protection.

Section 703(a) (1) of Title VII, 42 U.S.C.A. § 2000e–2(a) (1) provides that it shall be an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." This language evinces a Congressional intention to define discrimination in the broadest possible terms. Congress chose neither to enumerate specific discriminatory practices, nor to elucidate in extenso the parameter of such nefarious activities. Rather, it pursued the path of wisdom by being unconstrictive, knowing that constant change is the order of our day and that the seemingly reasonable practices of the present can easily become the injustices of the morrow. Time was when employment discrimination tended to be viewed as a series of isolated and distinguishable events, manifesting itself, for example, in an employer's practices of hiring, firing, and promoting. But today employment discrimination is a far more complex and pervasive phenomenon, as the nuances and subtleties of discriminatory employment practices are no longer confined to bread and butter issues. As wages and hours of employment take subordinate roles in management-labor relationships, the modern employee makes ever-increasing demands in the nature of intangible fringe benefits. Recognizing the importance of these benefits, we should neither ignore their need for protection, nor blind ourselves to their potential misuse.

■ We must be acutely conscious of the fact that Title VII of the Civil Rights Act of 1964 should be accorded a liberal interpretation in order to effectuate the purpose of Congress to eliminate the inconvenience, unfairness, and humiliation of ethnic discrimination.

Parham v. Southwestern Bell Telephone Co., 8 Cir. 1970, 433 F.2d 421; Green v. McDonnell-Douglas Corp., E.D.Mo.1970, 318 F.Supp. 846; United States v. Medical Soc'y of South Carolina, D.S.C.1969, 298 F.Supp. 145. Furthermore, I regard this broad-gauged innovation legislation as a charter of principles which are to be elucidated and explicated by experience, time, and expertise. Therefore, it is my belief that employees' psychological as well as economic fringes are statutorily entitled to protection from employer abuse, and that the phrase "terms, conditions, or privileges of employment" in Section 703 is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with ethnic or racial discrimination. I do not wish to be interpreted as holding that an employer's mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee falls within the proscription of Section 703. But by the same token I am simply not willing to hold that a discriminatory atmosphere could under no set of circumstances ever constitute an unlawful employment practice. One can readily envision working environments so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers, and I think Section 703 of Title VII was aimed at the eradication of such noxious practices.

■ Petitioners urge, nevertheless, that the second portion of Mrs. Chavez's charge could not relate to an unlawful employment practice because it alleges discrimination directed toward petitioners' patients and not toward any employee. Essentially petitioners' contention is that their discriminatory treatment or classification of patients is not a practice directed toward any employee and that because of such discrimination Mrs. Chavez cannot complain that she is treated any differently than any other employee. However, petitioners' eisegesis is not consistent with the interpretation recently accorded Title VII by the Supreme Court. In Griggs v. Duke Power

Co., 1971, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158, the Court held that the absence of discriminatory intent by an employer does not redeem an otherwise unlawful employment practice, and that the thrust of Title VII's proscriptions is aimed at the consequences or effects of an employment practice and not at the employer's motivation. Hence, petitioners' failure to direct intentionally any discriminatory treatment toward Mrs. Chavez is simply not material to the finding of an unlawful employment practice. Moreover, I believe that petitioners' argument does not countenance the distinct possibility that an employer's patient discrimination may constitute a subtle scheme designed to create a working environment imbued with discrimination and directed ultimately at minority group employees. As patently discriminatory practices become outlawed, those employers bent on pursuing a general policy declared illegal by Congressional mandate will undoubtedly devise more sophisticated methods to perpetuate discrimination among employees. The petitioners' alleged patient discrimination may very well be just such a sophisticated method and, if so, then Mrs. Chavez, as the primary object of the discriminatory treatment, suffers directly the consequences of such a practice and is entitled to protection in accordance with the provisions of Title VII.

## II. *Sufficiency of the Charge*

█ Even though I would hold that a working environment heavily charged with discrimination may constitute an unlawful practice, I must nevertheless resolve whether or not Mrs. Chavez's charge of "segregating the patients" is sufficient to trigger the Commission's investigatory functions. I am met at the outset with scant legislative guidance. The relevant portion of Section 706(a) of Title VII, 42 U.S.C.A. § 2000e–5(a) provides:

> "Whenever it is charged in writing under oath by a person claiming to be aggrieved, . . . (and such charge sets forth the facts upon which it is

based) that an employer . . . has engaged in an unlawful employment practice, the Commission shall . . . make an investigation of such charge. . . . ."

In relation to substantive matters, Section 706(a) seemingly requires that the charge (1) set forth the facts upon which it is based, and (2) allege an unlawful employment practice.

█ Concerning the proper criterion to be applied in determining whether or not a charge is factually sufficient and comports with the requirements of the parenthetical clause of Section 706(a), I believe that the Fourth Circuit has adopted a standard which is both consistent with the underlying policy of Title VII and promotive of the purposes and objectives embodied in its enforcement provisions. In Graniteville Co. v. EEOC, 4 Cir., 1971, 438 F.2d 32, 38, that court stated:

> "The purpose of the charge under section 706 is only to initiate the EEOC investigation, not to state sufficient facts to make out a prima facie case. The parenthetical clause in section 706 (a) only requires a sufficient allegation to give the EEOC notice of what it is to investigate and put the respondent on notice of the practice or violation with which it is charged.

> "The scope of prohibited practices under Title VII is broad. The section 706(a) requirement that charges state the facts on which they are based must accordingly be given a flexible interpretation as applied to allegations of different unlawful employment practices. If a charging party is alleging a specific incident as a violation of Title VII, such as denial of a requested promotion or the termination of his employment, it may be appropriate to require some degree of specificity of the charge's allegations. However, sophisticated general policies and practices of discrimination are not susceptible to such precise delineation by a layman who is in no position to carry out a full-fledged investigation himself . . . . ."

Applying this standard to the instant case, I believe that the complainant's charge of "segregating the patients" constitutes a sufficient factual allegation to inform the EEOC of what it is to investigate and to notify the employer of the practice with which it is charged. I am not unmindful of the fact that Mrs. Chavez might have detailed the specific act or acts of segregation of which she complains. However, the involution and obscurity of the possible unlawful employment practice in this case demand that a flexible interpretation be accorded to this requirement and that a court accept as sufficient a generalized factual allegation which in connection with an elemental or common unfair employment practice might otherwise be rejected as imprecise.

Turning to the sufficiency of the charge in relation to the second requirement, that of an allegation of an unlawful employment practice, I note that a problem exists because of the indefiniteness of Mrs. Chavez's charge. Assuming that the underlying facts show that petitioners are in some manner segregating their patients, then the particular act or acts of segregation may or may not constitute an unlawful employment practice. However, I do not view certainty of violation as a condition precedent to EEOC investigation. A charging party's failure to allege facts which, if true, would conclusively show a violation of Title VII should not be fatal to the effectiveness of the charge. Rather, I think that a charge is sufficient to initiate EEOC proceedings if its factual allegations could reasonably encompass, upon a full investigation, an unlawful employment practice. In the instant case the petitioners' patient segregation could be so employee demeaning as to constitute an invidious condition of employment, and the Commission should have the right to investigate and employ its expertise in determining whether or not the facts in the particular enterprise give rise to an unlawful employment practice. Thus, the *possibility*

that petitioners' segregation of its patients could encompass an unlawful employment practice justifies an EEOC investigation. I believe that this conclusion is consistent with the general interpretative treatment that has been given to the enforcement provisions of Title VII by the federal judiciary.

In those cases in which a liberal construction has been given to various procedural provisions of Title VII's enforcement process, the courts have founded their liberality on a number of practical considerations. First, courts have recognized that these enforcement provisions were fabricated as lay-initiated proceedings, intended to be utilized by the most unlettered and unsophisticated employees. Sanchez v. Standard Brands, Inc., 5 Cir. 1970, 431 F.2d 455; King v. Georgia Power Co., N.D.Ga.1968, 295 F.Supp. 943. Furthermore, federal decisions have noted that complainants are often unaware of "the full panoply of discrimination which [they] may have suffered" and frequently are "ignorant of or unable to thoroughly describe the discriminatory practices to which they are subjected." King v. Georgia Power Co., *supra,* 295 F.Supp. at 947. See Sanchez v. Standard Brands, Inc., *supra,* 431 F.2d at 466. This is particularly true where the discrimination is embodied in a highly complex and abstruse practice. *See* Graniteville Co. v. EEOC, *supra.* Finally, it has been recognized that a charge of discrimination initiates only an administrative fact-finding procedure in the context of a non-adversary investigation in which the Commission simply attempts to determine whether reasonable cause exists to believe that the charge is true. General Employment Enterprises, Inc. v. EEOC, 7 Cir. 1971, 440 F.2d 783; Graniteville Co. v. EEOC, *supra;* Sanchez v. Standard Brands, Inc., *supra.*

These considerations lead me to conclude that the Commission must be permitted to view a complainant's charge in its broadest reasonable sense. Since the factual allegations of Mrs. Chavez's charge could reasonably encompass an

unlawful employment practice, the Commission should be empowered to ascertain the factual contours of the alleged patient discrimination and to make its determination as to existence of "reasonable cause." I emphasize that I do not conclude that patient discrimination is a per se violation of Title VII. Nor do I hold that the burden of demonstrating that patient segregation, if existent, is such a malefic condition of employment as to constitute a statutory interdiction is a gossamer one. I simply conclude that the Commission possesses the statutory authority to investigate psychological fringes in an employment relationship and to come to a conclusion as to whether or not, in the particular case, such activities are within the curative cupola of the Act. Therefore, assuming that patient segregation be found to exist, I leave to another day a judicial evaluation of its effect on the employment conditions of the company's employees.

Based upon the foregoing discussion, it follows that the Commission should be granted access to information concerning the petitioners' patient applications. Therefore, the judgment of the district court is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

GODBOLD, Circuit Judge (specially concurring):

I concur with Judge Goldberg in the result that the District Court must allow access by EEOC to items 6 and 7 of the Demand for Access to Evidence. My concurrence is restricted to that result.

I accept a construction of Mrs. Chavez's charge which EEOC has urged upon this court as an alternative to the construction preferred (and accepted as being within the statute) by Judge Goldberg, and preferred (but considered as outside the statute) by Judge Roney. It is that Mrs. Chavez's charge could be considered as describing discrimination practiced against her in that she, because of her ethnic status as a Spanish surnamed American, was permitted or required by her employers to attend or to have contact with only segregated patients, and that this would be an unlawful employment practice under subsections (a) (1) and (2). EEOC's brief (p. 19) says this:

> The instant charge may also be interpreted as alleging that Rogers' minority group employees are not permitted to have contact with Anglo-Saxon patients. This clearly constitutes an unlawful term or condition of employment which the Commission has authority to investigate, one which could not be justified under any set of facts, even if Rogers were to claim that the assignment of employees was the result of customer preference.

I agree with EEOC that this is a possible and rational construction. Thus read, and independently of the assertion of discriminatory discharge, the claim refers to unlawful employment practices consisting, under § 2000e–2(a) (1), of discrimination against Mrs. Chavez because of her race, color (etc), and, under § 2000e–2(a) (2), of classification of her because of her race, color (etc.).

On this appeal EEOC has given primary emphasis to the construction that the charge of employer segregation of patients (or clients), even if such a practice vis-a-vis the patients (or clients) themselves is not otherwise forbidden by law, is a charge that there exists a policy which so "infects the total environment" of employment that it constitutes an unlawful employment practice against any employee who works in that environment. This interpretation was given primary, if not sole, emphasis by EEOC in the District Court. The District Judge adopted it and, considering the charge as so construed, rejected the charge as a basis for access to items 6 and 7.

The hearing before District Judge Fisher consisted only of discussion with counsel, including that for EEOC. At that level EEOC eschewed the construction which it now asserts on appeal as an alternative meaning.

We must emphasize the failure of Mrs. Chavez's complaint in this regard

to show that she is aggrieved in a manner contemplated by Title VII. As it has been explained to the Court, Mrs. Chavez claims that Petitioners afford their patients different treatment according to their ethnic origins. It is not alleged that, for instance, Mrs. Chavez is required or permitted to attend only to patients of a certain ethnic origin and not to others. Such a complaint might indicate a classification of employees such as is prohibited by § 703. That is not our case. Mrs. Chavez claims only that she is offended by the manner in which her former employers treated their customers. Rogers v. EEOC, 316 F.Supp. 422, 425 (E.D.Texas, 1970). Thus, it appears to me that the District Judge understood that there was presented to him for consideration a construction of the claim which would embrace a broad and important extension of what previously had been judicially considered to be within the statute, an extension which he rejected, and that there was excluded from his consideration a possible narrower construction which he recognized might well be within the statute. His understanding came not from evidence or from statements made to him by Mrs. Chavez but from explanations given to him by EEOC of what it was that Mrs. Chavez was claiming. Now, at the appellate level, the narrower construction is asserted by EEOC as an alternative construction on the basis of which it should obtain the discovery it desires. This shifting position, as I point out below, is one of the reasons why I would grant relief only on the narrower ground.

I adopt EEOC's alternative construction for several reasons. It falls within the liberal principles of construction which we apply to lay-drawn charges filed with EEOC, often written by persons not well educated and usually by persons unschooled in the niceties of legal draftsmanship. Parliament House Motor Hotel v. EEOC, 444 F.2d 1335 (5th Cir., 1971); Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970); Jenkins v. United Gas Corp.,

400 F.2d 28 (5th Cir. 1968). The charge need only "give sufficient information to enable EEOC to see what the grievance is all about." Parliament House, supra, 444 F.2d at 1339–1340, quoting from Jenkins v. United Gas, supra. We know from the charge that Mrs. Chavez complained, inter alia, that: "The above company has discriminated against me because of my national origin Spanish surnamed American by . . . segregating the patients."

The construction which I adopt falls within well established boundaries of the statute—it is in terms of discrimination against Mrs. Chavez because of "such individual's" race, national origin, etc., 42 U.S.C. § 2000e–2(a) (1), or is a limitation, segregation or classification of Mrs. Chavez, adversely affecting her status as an employee, because of "such individual's" race, national origin, etc., 42 U.S.C. § 2000e–2(a) (2). With the "charge under investigation" given the construction which I accept, it is one made "by a person claiming to be aggrieved," 42 U.S.C. § 2000e–5, and items 6 and 7 meet the requirements of relevance and materiality to the charge. This strikes me as a much sounder judicial approach than construing the charge as asserting a type of discrimination indirect and collateral, pursuant to which Mrs. Chavez was offended by segregation practices directed against others who are of another ethnic group, and who are not employees, and directed at such others because of their race, national origin, etc.

The rule of liberal construction of lay-drawn charges prevents technicalities from closing the courthouse door to the unsophisticated. The purpose of the rule is fully vindicated by resting decision on a single allowable interpretation of the charge. Also, just as any other litigant, the agencies of the government should be encouraged, or even required, to advance at the earliest possible stage the contentions which they propose to make. Whether in this case the course of events has been ingenious or ingenuous, we have been presented at the appellate level with

a problem consuming many hours of judicial labor, producing three differing views and no opinion of the court, concerning a question of discovery arising from an administrative proceeding where facility should be a watchword, and all in an appeal that possibly might have been avoided. Not only is it unnecessary for us to reach the primary construction asserted by EEOC, but in the circumstances of this case as a matter of judicial administration of our own affairs, it is inappropriate that we do so.

RONEY, Circuit Judge (dissenting):

The primary issue on this appeal is whether the three words "segregating the patients," and nothing more, except that the claimant is a Spanish Surnamed American, allege an unfair unemployment practice against Mrs. Josephine Chavez under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. In the investigation of a charge filed by Mrs. Chavez, the Equal Employment Opportunity Commission seeks information and records concerning applications of patients for service.[1] The obvious thrust of the Commission's investigation is to determine whether the records show that Negro patients are treated differently from others.[2] The employer Texas State Optical objects to this line of investigation. Before EEOC is entitled to information which would show whether or not Texas State Optical segregated its patients according to race, it must be demonstrated that the evidence "relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation."[3] We are not faced with broad questions concerning the legality, morality or propriety of customer discrimination, but the narrow decision as to whether the employer is required by this statute to reveal this information to the EEOC.

The first question then is, "What charge is under investigation?" The second question is whether that charge is an unlawful employment practice covered by this subchapter of the Act. The third question is whether the evidence is relevant to the charge.

It is suggested that the three words "segregating the patients" may be interpreted to constitute a charge that the claimant, because of her national origin as a Spanish Surnamed American, was permitted to have contact with patients of one ethnic or racial group only. It is not argued that such a charge is not covered by the Act. The records would obviously be relevant to such a charge. So this point turns on the threshold question of whether this charge has actually been made and is under investigation. This interpretation was only suggested, not argued, in the court below and on

---

1. No argument has been made that the segregation of patients is illegal under either state or federal law.

2. "6. A written response to the following questions:
   "a. Does Texas State Optical instruct its employees at any of its Houston facilities to fill in Negro patients' applications for service with red ink or red pencil and to use black or blue ink or pencil for patients other than Negroes?
   "b. Has Texas State Optical ever so instructed its employees at any Houston facility or elsewhere?
   "c. Do Texas State Optical records of patients for service at its 306 Northline Mall, Houston, Texas, facility now contain, or have they within the last two years contained, any application filled out in red ink or pencil?

"d. If the answer to 'c' is 'yes,' why were they filled out in red?
"7. Respondent Texas State Optical is to make available to a representative of the Equal Employment Opportunity Commission its records of patients' applications for service at its 306 Northline Mall, Houston, Texas, facility for purposes of inspection."

3. 42 U.S.C. § 2000e–8(a). "In connection with any investigation of a charge filed under section 2000e–5 of this title, the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation."

this appeal. It seems clear that the district court was correct in holding that the words "segregating the patients" did not, and were not intended to, constitute an allegation that Mrs. Chavez was permitted to have contact with only one group of patients.

In the first place, there is not the slightest indication in the entire record before us that Mrs. Chavez had any contact with the patients at all. In the second place, these words would not be key words to such a charge. If Mrs. Chavez were permitted contact with only one class of patients, the issue as to unfair employment practice would not turn on whether the patients were segregated. Segregation of patients would not be a necessary element to such a charge. These are not key words, the mere mention of which gives notice of the allegation of a well-known kind of discrimination. In the third place, it would seem easy enough for Mrs. Chavez to give some clearer indication that she was discriminated against in this manner, if such were the case. Mrs. Chavez knows better than anyone whether she had contact with patients of but one ethnic group, if that be her complaint. It does not seem to violate any reasonable approach to the informal procedures involved for the EEOC to find out at least that fact from Mrs. Chavez before it launches into an investigation of whether such practice discriminated against her because of her national origin. This court has recognized the authority of the EEOC to amend and amplify a charge by having the charging party set forth her allegations in greater detail. Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970). The fact that it did not obtain clarification and thus avoid

this protracted litigation bolsters a decision that such a charge was not "under investigation" by the EEOC.

The main difficulty with granting the EEOC access to the records on this interpretation of the charge seems to be simply that it gives access to records which relate to a charge that apparently neither Mrs. Chavez nor the EEOC is making.

On essentially this same objection I would dispose of the argument that the records of patient discrimination would be relevant evidence to the charge that the firing of Mrs. Chavez was ethnically motivated. Although this charge was clearly made in the first part of her complaint, it seems to have nothing to do with the records sought by the EEOC in this investigation.[4] First, she is Spanish Surnamed American, and the EEOC seeks records to show discrimination against Negroes. Second, her statement about being fired because of friction with Caucasian females reasonably negates the relevance of the records to the problem involved. Third, the cases cited by EEOC merely indicate that evidence of other employment discrimination may be relevant to a particular charge of discrimination.[5] Such cases are not concerned with customer records. Fourth, and this is perhaps the most persuasive reason for sustaining the district court, the point was not argued below and seems to be asserted here to try to justify a request for the records for actual use in the investigation of an entirely different kind of complaint.

In the way this case has been presented, it is quite obvious that the EEOC wants the records for the purpose of investigating the charge that the segrega-

4. "The above company has discriminated against me because of my national origin Spanish Surnamed American by:
   a. Terminated me from my job without a reason. I was the only Spanish Surnamed American employed with seven Caucasian females who abused me. The manager told me my work was allright but he had to let me go because of friction.·
   b. segregating the patients"

5. Blue Bell Boots, Inc. v. EEOC, 418 F.2d 355 (6th Cir. 1969) ; Parham v. Southwestern Bell Telephone Co., 433 F.2d 421 (8th Cir. 1970) ; United States by Clark v. Dillon Supply Co., 429 F.2d 800, 804 (4th Cir. 1970) ; Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968).

tion of patients was an unfair employment practice against minority group employees under Title VII. The case should be dealt with on that basis.

There is serious doubt as to whether the mere words "segregating the patients" are adequate to state an unfair employment charge sufficient to meet the most meager requirements of due process. These words do not necessarily relate to employment at all, and could mean so many things that, standing alone, they cannot be said to charge any particular employment discrimination. In each of the cases cited to us by the EEOC, the charge contained words relating to hiring, firing and promoting of employees with at least some conclusionary suggestion that there was discrimination in one of these areas because of the race, color, religion, sex, or national origin of the employees.[6] Even though we are committed to a policy that requires little in the way of stating a charge,[7] where, as here, the words in the charge do not on their face speak to employment practices, the claimant should at least be required to indicate how the facts alleged relate to her employment, and how it can reasonably be inferred that she has been discriminated against because of her national origin.

However, by permitting the words to be embellished by the argument of the EEOC as to the charge that it says it is investigating, we get to the question of whether such a charge is included within the ambit of unlawful employment practices proscribed by Congress in Title VII. We must decide whether there is any legal basis for a claim that an employer's discriminatory practices against patients can constitute an unlawful employment practice against a minority group employee under this statute. The

question of whether or not the relationship between an employee and his working environment is of such significance that it ought to be cloaked with statutory protection as an employment practice is a question for Congress, not for the EEOC, and not for us. The question we must answer is whether Title VII, as written, does give that relationship statutory protection. Not whether it could or should —but whether it does.

The answer to this question must come from the following provision of the statute:

§ 2000e–2. Unlawful employment practices — Employer practices

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual, of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

There is nothing here to indicate that Congress intended by this subchapter to deal with any general condition of employment applicable to all employees regardless of their race, color, religion, sex, or national origin. The section is restricted to employment practices and does not encompass general business practices. The claimant must be the ob-

---

6. All of the cases cited to us contain charges relating to hiring, firing or promotion of employees: General Employment Enterprises, Inc. v. EEOC, 440 F.2d 783 (7th Cir. 1971); Graniteville Company, (Sibley Division) v. EEOC, 438 F.2d 32 (4th Cir. 1971); Local No. 104, Sheet Metal Workers International Assoc., AFL–CIO v. EEOC, 439 F.2d

237 (9th Cir. 1971); Georgia Power Co. v. EEOC, 412 F.2d 462 (5th Cir. 1969); Blue Bell Boots, Inc. v. EEOC, *supra*; Jenkins v. United Gas Corp., *supra*; Sanchez v. Standard Brands, Inc., *supra*; and Parliament House Motor Hotel v. EEOC, 444 F.2d 1335 (5th Cir. 1971).

7. Parliament House Motor Hotel v. EEOC, *supra*.

ject of some special discriminatory practice which operates against her opportunities of employment because of her race, color, religion, sex, or national origin. These are all clearly discernible, objective employee characteristics, which an employer can readily ascertain. The Act does not include in this list any reference to the emotional and psychological make-up of an individual employee. No race, color, religion, sex, or national origin carries with it a monopoly on sensitivity to an employer's discrimination against customers. Once the employment practices are such that the opportunities for employment in a business are not unequal because of an individual's race, color, religion, sex, or national origin, this particular subchapter has done its job. The Act does not proscribe business practices which result in unequal employment opportunities because of personal, emotional or psychological characteristics that might be common to various employees regardless of their race, color, religion, sex, or national origin. There is no indication in the Act or the legislative history that Congress in passing Title VII was concerned about whether an employer's business presents conditions for employment that are environmentally attractive to all, whether the manner of his operation suits everyone, or whether a particular individual might be uncomfortable or have feelings of unhappiness in his employment. The merit of this kind of approach is not up for decision. Congress has simply not given this scope to its legislation.

Any construction of Title VII that permits discriminatory conditions in customer service to constitute an unfair employment practice would make the Civil Rights Act of 1964 internally inconsistent. For example, Title II of the Act deals with customer discrimination in public accommodations, providing that the subchapter does not apply to certain establishments. 42 U.S.C. § 2000a(e). However, under the construction suggested here customer discrimination in any of those excluded establishments could become an unfair employment practice which would permit the employee to bring suit to end the discrimination. 42 U.S.C. § 2000e–5. It is not reasonable to assume that Congress intended to exclude certain establishments from the direct prohibition against customer segregation under one section of the statute, only to have them included in another section which indirectly proscribes such a practice. Finding discrimination in customer service which is offensive to employees to constitute an unfair employment practice would permit the EEOC to investigate and conciliate matters in the customer service area of public accommodations. This also would present a conflict within the Civil Rights Act since the Community Relations Service is charged with seeking voluntary compliance under the public accommodations subchapter. 42 U.S.C. § 2000a–3 (d). Where such inconsistencies have not been clearly created by Congress, they should not be unnecessarily created by judicial decision.

The EEOC argues that an employee "who claims to be aggrieved by an alleged unlawful practice need not be the direct victim of such practice." Insofar as being helpful in the decision of this case, the argument overlooks two points: first, the unlawful practice alleged must be an unlawful *employment* practice, if the claim is made under Title VII. There must be a determination that there is an employment practice involved before we get to the question of who is aggrieved thereby. Certainly this statute was not intended to encompass every unlawful practice that an employer might engage in. Second, even if Title VII were stretched to include a business practice which is not an employment practice, the employer in this case argues, while denying that it segregates patients, that it is not covered by any law directly prohibiting such segregation. The EEOC cites no authority to the contrary. This makes inapplicable the cases relied upon by EEOC in which a union files a discrimination suit for unlawful employment

practices,[8] an applicant for employment challenges employment practices which affect only incumbent employees,[9] persons of one national origin complain of employment practices affecting persons of another race or national origin,[10] or an employee in one plant complains of employment discrimination in another plant.[11] Equally inapplicable are the cases in which a patient has been allowed to challenge unlawful employment practices in a hospital,[12] or which concern the standing of certain individuals to challenge a discriminatory school system.[13]

In all of these cases the discrimination complained of was unlawful and it was a question of who could complain. This line of authority is not helpful in determining the fundamental question of whether the employer is engaged in an unlawful employment practice.

The notion that customer segregation might be utilized as a subtle scheme to purposely discriminate against minority group employees presumes that were it not for the employer's bent on perpetrating discrimination among employees, it would not engage in customer segregation. Under this argument the reason that Texas State Optical segregates patients is to discriminate against Mrs. Chavez. If it were not for its desire to discriminate against Mrs. Chavez, it would not segregate its patients. Even if such a situation could raise customer segregation into the realm of an employment practice, the argument is so contrary to human nature and the real-life world of discrimination that it furnishes an unreliable base for judicial decision.

Certainly it is unrealistic enough to at least require a specific charge that this was done before an employer should have to respond to an investigation.

It is pertinent to note that there are disadvantages to wide-ranging investigation by the EEOC.

" . . . While a respondent might be cooperative in complying with the EEOC's narrowly focused informational demands, he might, if made the subject of a 'wholesale fishing expedition,' become intractable. In addition, if the EEOC broadens its investigations to the limit of a liberal discovery standard in its zeal to vindicate the public interest in ferreting out all discrimination, the private interest of the complainant may suffer for it. The resolution of his specific complaint may be needlessly delayed.[140] Thus, although there are persuasive arguments for giving the EEOC sweeping investigatory power, there are countervailing considerations which should lead the Commission to be careful in exercising its discretion."

Developments in the Law, Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L. Rev. 1109, 1218 (1971).

This perception was especially accurate in this case. Mrs. Chavez' real complaint was that she lost her job due to friction in the office because of her Spanish heritage. The relief she obviously wanted was to have her job back as quickly as possible. She filed her complaint the day after she was fired. Office friction because of intolerance between co-work-

---

8. International Chemical Workers Union v. Planters Mfg. Co., 259 F.Supp. 365, 368 (N.D.Miss.1966) ; Local 186, International Pulp, Sulphite and Paper Mill Workers v. Minnesota Mining & Mfg. Co., 304 F.Supp. 1284 (N.D.Ind.1969).

9. Carr v. Conoco Plastics, Inc., 423 F.2d 57 (5th Cir. 1970), affirming 295 F. Supp. 1281, 1289 (N.D.Miss.1969) ; Johnson v. Georgia Highway Express Co., 417 F.2d 1122 (5th Cir. 1969).

10. Sanchez v. Standard Brands, Inc., supra.

11. Jenkins v. United Gas Corp., supra, 400 F.2d at p. 31, fn. 5.

12. Marable v. Alabama Mental Health Board, 297 F.Supp. 291, 297 (M.D.Ala. 1969) ; see also Cypress v. Newport News General & Nonsectarian Hospital Ass'n, 375 F.2d 648, 653 (4th Cir. 1967).

13. United States v. Montgomery County Board of Education, 395 U.S. 225, 231–232, 89 S.Ct. 1670, 1674, 23 L.Ed.2d 263 (1969).

ers seems a type of complaint especially suitable for conciliation. As to that charge, the record indicates a co-operative attitude by the employer in supplying the information sought by the EEOC. The breadth of the EEOC's investigation appears to have lost view of the private interest that Mrs. Chavez had in being reinstated to her job.

Since the records concerning its patients were not relevant to any unfair employment charge covered by Title VII, Texas State Optical should not be put to the time, expense and inconvenience of revealing such records to governmental authority. I would affirm the decision of the district court.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.