ROVNER, Circuit Judge,
concurring in part and concurring in the judgment.
I concur with my brothers insofar as they conclude that the evidence does not permit the inference that the school district was deliberately indifferent to the harassment that Gabrielle M. was experiencing. Ante at 823-25. Once apprised of the harassment, the school district took a series of steps to separate Jason L. from Gabrielle — suspending him, then reassigning him to a different classroom, and ultimately reassigning his class to different lunch and recess periods — so that the harassment would not recur. Although there are hints in the record that Jason may have continued harassing Gabrielle even after the district took these steps— including in particular the letter from Gabrielle’s attorney to the school distriel&wkey; there is no admissible evidence that I have found which provides concrete support for this point. Even if we indulge the inference that Jason may had the opportunity to harass Gabrielle on occasions when inclement weather resulted in shared lunch and recess periods (see ante at 820 n. 1, 824-25), I agree that the evidence nonetheless fails to suggest that the school district was indifferent to this possibility.
However, in the course of affirming Judge Lefkow’s decision to enter summary judgment in favor of the school district, the majority makes two additional points *826 that are noteworthy: first, that because Jason, Gabrielle, and the other children did not appreciate the gravity of the conduct at issue in this case, they “were not engaging in knowingly sexual acts, a fact that (at a minimum) detracts from the severity and offensiveness of their actions” {ante at 823); and second, that because the alleged harassment did not cause Gabrielle’s grades to suffer or her absenteeism from school to increase, she was not deprived of the educational opportunities that Title IX protects {id.).[1] I write separately to comment on these aspects of my colleagues’ reasoning.
Although my colleagues have assumed for the sake of argument that the acts of a kindergarten student can amount to sexual harassment for purposes of Title IX {see ante at 822-23), they have done so with evident reluctance. They observe at the outset that “[t]here is a threshold question, altogether reasonable and rational, of whether a five or six year old kindergartner can ever engage in conduct constituting ‘sexual harassment’ or ‘gender discrimination’ under Title IX.” Ante at 821. Our task, however, is not to “answer whether six year old Jason should carry the label of ‘sexual harasser.’ ” Ante at 821-22. It is the school district, not Jason, that is charged with liability. Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 640-41, 119 S.Ct. 1661, 1670, 143 L.Ed.2d 839 (1999). The question we must decide is whether the school, when confronted with acts that amounted to sex-based harassment, evinced deliberate indifference to that harassment. Id. at 642-43, 644-45, 119 S.Ct. 1661, 1672. Having answered that question in the negative, we need go no further; absent evidence of deliberate indifference to the harassment that Gabrielle has alleged, the district cannot be held liable for that alleged harassment.
My colleagues also suggest, however, that the validity of a Title IX claim for sexual harassment depends, at least to some degree, upon the sexual awareness of the harasser and harassee. When school psychologist Larry Anthony spoke with Jason, Gabrielle, and the other students who were kissing one another, jumping on top of one another, and putting their hands down one another’s pants, it was his observation that the children were not fully aware of how serious their actions were. Ante at 819. This suggests to my colleagues that neither Jason nor the other children — including Gabrielle — were engaged in “knowingly” sexual acts. Ante at 823. Although my colleagues stop short of saying that sexual awareness is a prerequisite to a sexual harassment claim, they suggest that the absence of such awareness at the least renders the harassment less severe and less offensive than it otherwise might be. Id.
Although I too think it unlikely that either Jason or Gabrielle fully appreciated the sexual nature of his conduct, that factor by itself does not foreclose nor does it undermine Gabrielle’s Title IX claim. Harassing conduct need not be motivated by sexual desire, nor must it be overtly sexual in nature, in order to support a claim of sex discrimination. See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998); Berry v. Delta Airlines, Inc., 260 F.3d 803, 811 (7th Cir.2001); see also U.S. Dep’t of Education, Office for Civil Rights, Revised Sexual Harassment Guidance: *827 Harassment of Students by School Employees, Other Students, or Third Parties, at 3 & nn. 17, 19 (collecting cases) <http://www.ed.gov/offices/OCR/shguide/ index.html# Guidance >. The pertinent question, for purposes of Title IX, is whether the harasser engaged in conduct “on the basis of sex” that had the effect of denying the plaintiff access to educational opportunities. 20 U.S.C. § 1681(a); see Oncale, 523 U.S. at 80, 81, 118 S.Ct. at 1002. Here, the record readily supports the inference that Jason’s acts were based on sex: although some of Jason’s conduct involved boys as well as girls (showing his classmates his underwear, for example), the more intrusive and troubling aspects of his alleged behavior — including in particular touching Gabrielle’s genitals — involved only Gabrielle and perhaps other girls in the class. And although Gabrielle, like Jason, may not have understood the sexual significance of Jason’s actions, the evidence nonetheless suggests that she found them to be unwelcome and inappropriate. When first questioned about Jason’s conduct by her mother, Gabrielle said that Jason had been touching her chest and genitals and had done other “nasty stuff’ to her since the first day of school. She would later testify that when Jason rejoined his classmates for lunch and recess following a period of separation, he continued to approach Gabrielle and seek to “play with [her] funny ways” at recess. At the same time, one may readily infer from the evidence that Jason’s conduct disturbed Gabrielle: she allegedly lost her enthusiasm for school, had nightmares and difficulty sleeping, wet her bed, and lost her appetite.
Moreover, whatever the children’s comprehension may have been, the adults charged with their care and education had the ability to appreciate the inappropriate and potentially harmful nature of the conduct. In fact, school officials, once alerted to Jason’s behavior, immediately recognized its problematic character. It is that recognition, rather than Jason’s knowledge, that exposes the school district to liability. If the school knew that Jason was harassing one of his peers but remained idle in deliberate indifference to that harassment — in this way “causing” the harassment to continue and to deprive Gabrielle of access to educational opportunities or benefits — it would face liability under Title IX. See Davis, 526 U.S. at 640-41, 644-45, 119 S.Ct. at 1670, 1672.
The knowledge and intent of the school district are therefore central to the liability determination; the knowledge and intent of the student perpetrating the harassment are really irrelevant. This is a point that has already been made in the employment context. Courts have repeatedly rejected the notion that a harasser’s innocent intent will defeat liability under Title VII, reasoning that because it is the employer that is held liable for workplace harassment, it is the employer’s response to the harassment, and not the perpetrator’s intent, that matters. See Newton v. Dep’t of Air Force, 85 F.3d 595, 599 (Fed.Cir.1996); Ellison v. Brady, 924 F.2d 872, 880 (9th Cir.1991); Vaughn v. Pool Offshore Co., 683 F.2d 922, 925 n. 3 (5th Cir.1982); Bundy v. Jackson, 641 F.2d 934, 945 (D.C.Cir.1981); Rogers v. EEOC, 454 F.2d 234, 239 (5th Cir.1971) (opinion of Goldberg, J.), cert. denied, 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972); see also Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 2404-05, 2405-06, 91 L.Ed.2d 49 (1986) (describing elements of hostile environment claim without reference to harasser’s intent). The same principle ought to hold true in the school environment. Jason likely did not realize that he was harming his female classmate; but his ignorance says nothing about the extent to which his actions interfered with Gabrielle’s educational opportunities or *828 about the school district’s awareness of and response to his conduct. Conversely, Jason’s knowledge and intent, even if culpable, would not suffice to render the school district liable — only the district’s own deliberate indifference to the harassment could do that. Davis, 526 U.S. at 640-41, 644-45, 119 S.Ct. at 1670, 1672. Our focus, in sum, properly rests on what the school district knew and intended, not on what Jason was capable of realizing at age six.
I also part ways with my colleagues as to whether the alleged harassment had a sufficiently “concrete, negative effect” to be cognizable under Title IX. See ante at 823, quoting Davis. Because Gabrielle’s grades did not fall as a result of the harassment and because she was able to continue attending school, my colleagues conclude that there is no proof that she was denied any educational opportunities by Jason’s actions. Id. I respectfully suggest that their view of the way in which harassment can interfere with a student’s educational opportunities is too narrow. Davis holds that “a plaintiff must establish sexual harassment of students that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims’ educational experience, that the victim-students are effectively denied access to an institution’s resources and opportunities.” 526 U.S. at 651, 119 S.Ct. at 1675. Construing the record favorably to Gabrielle, one may readily infer that the alleged harassment traumatized her psychologically: she lost her excitement for school, she resisted going to school, she was emotionally distraught, she had nightmares and difficulty sleeping, she lost her appetite, and she began wetting her bed. It is easy to imagine how such trauma might have interfered with her access to educational opportunities. See generally Michele Goodwin, Sex, Theory & Practice: Reconciling Davis v. Monroe & The Harms Caused by Children, 51 DE-PAUL L. REV. 805, 818-22 (2002); Diane M. Welsh, Limiting Liability Through Education: Do School Districts Have a Responsibility to Teach Students About Peer Sexual Harassment?, 6 AM. U.J. GENDER & L. 165,171-75 (1997).
The fact that Gabrielle’s grades did not suffer is by no means dispositive. Certainly at the kindergarten level, where learning social skills is at least as important as academic instruction, grades do not tell the complete story of how well a student is doing. At the same time, in Title VII cases, we have repeatedly rejected the notion that a victim’s ability to keep doing her job in the face of harassment will defeat her contention that the workplace was hostile. Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 444 (7th Cir.1994); Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1454-55 (7th Cir.1994); Saxton v. AT & T Co., 10 F.3d 526, 534-35 n. 14 (7th Cir.1993). As Justice Scalia has observed, “[T]he test is not whether work has been impaired, but whether working conditions have been dis-criminatorily altered.” Harris v. Forklift Sys., Inc., 510 U.S. 17, 25, 114 S.Ct. 367, 372, 126 L.Ed.2d 295 (1993) (Scalia, J., concurring); see also ibid. (Ginsburg, J., concurring). I see no reason to follow a different rule for purposes of Title IX. If anything, courts ought to be more flexible in assessing the harms that a child experiences as a result of harassment, given that children (especially young children) are far less able to articulate the fact and extent of their injuries and may manifest an array of different reactions to the harassment. Gabrielle may have managed to keep her grades up, yet she nonetheless may have confronted a hostile environment that made it much more difficult for her to develop and achieve as a student.
Also in the employment context, the Supreme Court has firmly rejected any requirement that the victim of harassment *829 suffer the equivalent of a nervous breakdown before she can recover under a hostile environment theory. Harris, 510 U.S. at 22, 114 S.Ct. at 370-71. “A discrimina-torily abusive work environment, even one that does not seriously affect employees’ psychological well-being, can and often will detract from employees’ job performance, discourage employees from remaining on the job, or keep them from advancing in their careers,” the Court explained. Id. at 22, 114 S.Ct. at 371. Likewise, a hostile school environment should be actionable before it results in consequences so dramatic as hospitalization or leaving school. See ante at 823.
The record here readily supports the inference that Gabrielle suffered a psychological injury as a result of the harassment, an injury that not only made her reluctant to attend school but ultimately required months of psychotherapy to address. This is more than enough evidence of a “concrete, negative effect” on Gabrielle’s education to establish a question of fact as to the harm that Gabrielle suffered as a result of the alleged harassment. Neither she nor future victims of school-place harassment should be penalized simply because they seem resilient. In fact, there is no telling at this time what damage Gabrielle’s traumatic experiences might cause her in the years to come.
For these reasons, I join my colleagues only insofar as they conclude that there is insufficient proof of the school district’s deliberate indifference to the alleged harassment to proceed beyond summary judgment.

. My colleagues also conclude that most of Gabrielle’s allegations as to the nature of the harassment lack sufficient clarity and specificity to permit the court to determine whether the harassment was severe, pervasive, and objectively offensive. Ante at 821-22. This was not an argument that the school district made below or that the district court considered, nor is it an argument that the district makes on appeal.