318 F.Supp. 846 (1970)
Percy H. GREEN, Plaintiff,
v.
McDONNELL-DOUGLAS CORPORATION, Defendant.
No. 68 C 187(2).
United States District Court, E. D. Missouri, E. D.
September 25, 1970.
*847 Louis Gilden, St. Louis, Mo., for plaintiff.
David R. Cashdan, Washington, D. C., for Equal Opportunity Comm., as amicus curiae.
Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for defendant.

MEMORANDUM
MEREDITH, District Judge.
This case was tried by the Court and this memorandum constitutes the Court's findings of facts and conclusions of law.
Plaintiff, Percy H. Green, filed suit against defendant, McDonnell-Douglas Corporation, alleging that defendant violated section 704(a) of the Civil Rights Act of 1964 [42 U.S.C. § 2000e-3(a)] by refusing to accept plaintiff for employment because of his involvement in civil rights activities and because he opposed practices made an unlawful employment practice by law. The Civil Rights Act of 1964 became effective on July 2, 1965.
Defendant contends that the refusal to reemploy plaintiff stems not from his past civil rights activities, but from his participation in a "stall in" in which access to the defendant's plant was blocked and his participation in a protest at which defendant's employees were padlocked in the building at which they were employed.
Plaintiff had been employed by defendant, McDonnell-Douglas Corporation, since 1956. Plaintiff was a qualified mechanic, who had been rated average by his supervisors at McDonnell-Douglas Corporation.
In 1962, plaintiff inquired about transferring from his union job to the non-union job of laboratory technician in the Electronic Equipment Division. Plaintiff spoke with Edward Sinecki, supervisor of laboratory services in the department, who explained the work and cautioned him of the danger of a layoff because of the sacrifice of union seniority and that work in the department was expected to decline. At that time plaintiff decided to remain at the position he then held.
In 1963, plaintiff reapplied to work in the Electronic Equipment Division. He talked to Mr. Sinecki and Bob Godefroid, *848 who reiterated the discussion of the previous year about the possibility of layoff and the short term of the project upon which they were working. The plaintiff's manner of dress was discussed and he was cautioned of the informal policy of the department as to working attire, because of the number of visitors touring the department.
Plaintiff took the job and was assigned work similar to that performed by others in his grade and experience.
As evidence of discrimination, plaintiff contends that upon transferring he was given no tour of the department or training as was given to other employees. While the evidence is not conclusive that plaintiff received the tour, there is enough evidence in the record to satisfy this Court that he received the tour as a customary practice of the company. Training was not given the plaintiff because he possessed adequate training for the job. This was a standard practice of the company and was not discriminatory.
Plaintiff has been active and publicly involved in civil rights activities since the early 1960's. His testimony was that he had participated in various protests, including the climbing of the Gateway Arch, while employed at McDonnell. This protest activity is relied upon by the plaintiff to show that officials at McDonnell had knowledge of his activities and were laying him off because of these activities. The evidence shows that plaintiff's civil rights activities were not considered as a factor in the decision to lay off the plaintiff.
In the spring of 1964 with the completion of the Gemini simulator program, several people from the department were laid off; plaintiff was not included.
Later it became evident that more technicians were to be declared "surplus", so a semiannual ranking of employees by means of a "totem pole" was made in accordance with company policy. The "totem pole" was used for pay and promotional purposes and as a job evaluator.
After determining the men to be declared "surplus", an effort was made through the personnel department to relocate the men in various other departments. A voluntary test was given to help determine the qualifications of the men for higher job classifications which were open. Plaintiff refused to take the test.
Meetings with company officials were requested by plaintiff to discuss his layoff. Plaintiff indicated at these meetings that he felt he was being laid off because of his race and civil rights activities. Representatives of the defendant assured the plaintiff that this was not so. An investigation of the plaintiff's layoff was conducted by Mr. Krone, vice president of personnel, who ascertained that the layoff was due to a reduction in work force and not because of racial discrimination. Plaintiff also expressed the idea that because he was black and because of his prominence in civil rights activities, he should receive preferential treatment in the layoff. The defendant continued to search for a job for plaintiff in the company. This task was made more difficult in that the evidence showed that plaintiff insisted that any job found for him must involve no reduction in job status or be the equivalent of his then present position. With plaintiff's exacting standards and the work force reduction, the defendant failed in finding a job for the plaintiff. On August 28, 1964, plaintiff was laid off with eight other technicians.
After being laid off, plaintiff initiated protests by writing letters, filing charges, picketing, and various other means to protest his layoff. These various protest activities culminated in a demonstration in October of 1964. Plaintiff and other members of the Congress on Racial Equality organization stalled their cars on the main roads leading to defendant's plant at the time of a shift change. The second demonstration led by plaintiff was at the Roberts Building and resulted in the employees of the defendant being locked in the building at quitting time.
*849 The "stall in", as described in defendant's Exhibit A, was, in summary: five teams, each consisting of four cars would "tie up" five main access roads into McDonnell at the time of the morning rush hour. The drivers of the cars were instructed to line up next to each other completely blocking the intersections or roads. The drivers were also instructed to stop their cars, turn off the engines, pull the emergency brake, raise all windows, lock the doors, and remain in their cars until the police arrived. The plan was to have the cars remain in position for one hour.
Acting under the "stall in" plan, plaintiff drove his car onto Brown Road, a McDonnell access road, at approximately 7:00 a. m., at the start of the morning rush hour. Plaintiff was aware of the traffic problems that would result. He stopped his car with the intent to block traffic. The police arrived shortly and requested plaintiff to move his car. He refused to move his car voluntarily. Plaintiff's car was towed away by the police, and he was arrested for obstructing traffic. Plaintiff pleaded guilty to the charge of obstructing traffic and was fined.
The "lock in" arose out of a demonstration on July 2, 1965, in which plaintiff, as chairman of ACTION, a civil rights organization, was in charge of a picket line demonstration against McDonnell. On the way to this demonstration, a member of ACTION told plaintiff that he was planning to chain the front door of the Roberts Building, which housed employees of McDonnell. Plaintiff did not instruct him to refrain. During the demonstration, a chain and padlock were placed on the front door of the Roberts Building, and as a result, the defendant's employees were locked in the building. Plaintiff testified that he approved of chaining the door.
On July 26, 1965, plaintiff applied for work at McDonnell. Although plaintiff was qualified for the job, he was not hired. The defendant based its rejection of the plaintiff on his participation in the "stall in" and the "lock in" demonstrations.
The plaintiff raises two causes of action in his post-trial briefs. First, that the defendant discriminated against him in the layoff under 42 U.S.C. § 1981 because of his race and civil rights activities. Second, that defendant refused to rehire the plaintiff because of his race, participation in civil rights activities and opposing practices made unlawful under the Civil Rights Act of 1964, thus, violating 42 U.S.C. §§ 1981 and 2000e-3(a).
The Court finds that the issue of discrimination in the layoff is being raised for the first time in the post-trial briefs. The plaintiff's layoff claim is not pled in his amended complaint, nevertheless, the Court will consider it.
Plaintiff's layoff claim is based on his employment contract with the defendant. Although 42 U.S.C. § 1981 contains no statute of limitations, the applicable state statute controls. Glasscoe v. Howell, 431 F.2d 863 (8th Cir. Aug. 12, 1970); Waters v. Wisconsin Steel Works of International Harvester Co., 427 F.2d 476 (7th Cir. 1970); Butler v. Sinn, 423 F.2d 1116 (3rd Cir. 1970); Lambert v. Conrad, 308 F.2d 571 (9th Cir. 1962). The Missouri statute of limitations for employment contracts is five years. See, V.A. M.S. 516.120. Plaintiff was laid off on August 28, 1964. He did not introduce or offer at trial any evidence to substantiate this claim. The five-year period has expired. The Court finds that the claim is barred by the statute of limitations.
The Court will next consider the plaintiff's claim with regard to the defendant's refusal to rehire the plaintiff.
Before filing suit, plaintiff complied with the statutory requirements of 42 U.S.C. § 2000e-5 of complaining first to the Equal Employment Opportunity Commission. Plaintiff filed a charge with the EEOC that he was discriminated against because of his race and because of his civil rights activities. The *850 EEOC found that there was probable cause to believe that plaintiff was discriminated against in not being rehired only because of his civil rights activities.
The plaintiff contends that defendant violated 42 U.S.C. § 2000e-3(a) because of his opposition to employment practices made unlawful by Title VII of the Civil Rights Act of 1964. Plaintiff also contends in his post-trial brief that defendant's refusal to rehire him was based on race and his participation in civil rights activities, which is a violation of 42 U.S.C. § 1981.
The Court feels that the Court's discussion of the case under 42 U.S.C. § 2000e-3(a) will effectively dispose of any claim arising under section 1981. Section 42 U.S.C. § 2000e-3(a) provides:
"It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, * * * because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."
The Court approaches this issue bearing in mind that the purpose of Title VII is to eliminate the inconvenience, unfairness, and humiliation of discrimination in employment. United States v. Medical Society of South Carolina, 298 F. Supp. 145, 151 (D.S.C.1969).
In the matter before the Court, the controlling and ultimate fact questions are: (1) whether the plaintiff's misconduct is sufficient to justify defendant's refusal to rehire, and (2) whether the "stall in" and the "lock in" are the real reasons for defendant's refusal to rehire the plaintiff. The Court finds that they are.
Violations of the Civil Rights Act, like the National Labor Relations Act, depends on the employer's intent at the time of the decision. N. L. R. B. v. Ace Comb Co., 342 F.2d 841, 846 (8th Cir. 1965). It must be remembered that so far as the Civil Rights Act goes, the employer may discharge or refuse to reemploy for any reason, except discrimination or because of practices made unlawful under Title VII. The testimony and evidence before the Court fails to establish by its greater weight, or preponderance, that defendant's refusal to rehire plaintiff resulted from racial prejudice or plaintiff's legitimate civil rights activities. It seems clear from the record that defendant's reasons for refusing to rehire the plaintiff were motivated solely and simply by the plaintiff's participation in the "stall in" and the "lock in" demonstrations. The burden of proving other reasons was on the plaintiff. The plaintiff has not sustained this burden.
The plaintiff contends that his protest activities are protected by the First Amendment right to freedom of speech. The blocking of public streets and the locking in of defendant's employees does not come within the protection of the First Amendment. Communication of ideas by picketing and marching on streets is not afforded the same kind of protection under the First Amendment as is pure speech. Cox v. Louisiana, 379 U.S. 536, 555, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965).
The plaintiff could, of course, protest and try to persuade the defendant to rehire him, however, the right to engage in protests does not encompass unlawful acts. N. L. R. B. v. Fansteel Metallurgical Corp., 306 U.S. 240, 59 S. Ct. 490, 83 L.Ed. 627 (1939). Protest must be kept within reasonable limits if it is to be protected. Impeding the flow of traffic into or from an employer's plant exceeds such reasonable limits. Title VII of the Civil Rights Act of 1964 does not protect such activity as employed by the plaintiff in the "stall in" and "lock in" demonstrations. The evidence shows that plaintiff, who participated in many civil rights activities from 1960 through the time he was laid off in *851 1964, received no criticism from his employer because of these activities.
The plaintiff's actions are analogous to picketing in labor disputes. In labor law, picketing, as a general rule, is unlawful where either its object or its method is unlawful. The blocking of access to or exit from employer's place of business is not protected as lawful protest. N. L. R. B. v. Perfect Circle Co., 162 F.2d 566 (7th Cir. 1947). The Court finds that conduct such as the plaintiff's, which creates situations fraught with danger to other employees or to the general public, is not protected by Title VII. This type of conduct would justify a refusal to reinstate a striking employee in labor law. See W. J. Ruscoe Co. v. N. L. R. B., 406 F.2d 725 (6th Cir. 1969); Oneita Knitting Mills, Inc. v. N. L. R. B., 375 F.2d 385 (4th Cir. 1967); Victor Products Corp. v. N. L. R. B., 93 U.S.App.D.C. 56, 208 F.2d 834 (1953); N. L. R. B. v. Longview Furniture Co., 206 F.2d 274 (4th Cir. 1953); W. T. Rawleigh Co. v. N. L. R. B., 190 F.2d 832 (7th Cir. 1951).
The plaintiff argues that his offenses are of a minor nature and that no property damage occurred. The fact that no personal injury or property damage occurred was due solely to the fact that law enforcement officials had obtained notice in advance of plaintiff's demonstration and were at the scene to remove plaintiff's car from the highway. In the "lock in", if an emergency had occurred, the blocking of access to the outside of the building would have been disastrous. The evidence shows that plaintiff participated in both demonstrations knowing full well the consequences of his conduct. The plaintiff argues that he "did not chain the doors in the `lock in'". Nevertheless, those who actively cooperate with offenders who exceed the permissible scope of protest are equally to blame and forfeit the right to be rehired by the defendant. N. L. R. B. v. Fansteel Metallurgical Corp., 306 U.S. 240, 261, 59 S.Ct. 490, 83 L.Ed. 627 (1939); W. J. Ruscoe Co. v. N. L. R. B., supra. To order the rehiring of plaintiff, who has been guilty of such serious act of misconduct, cannot reasonably be said proper action to effectuate the policies of Title VII. To hold that plaintiff is entitled to be rehired is to put a premium on misconduct of this type and to encourage like conduct on the part of others. The purpose of the Act is to secure effective redress of employees' rights, to secure for them the right to exercise their lawful civil rights without discrimination because of this exercise, not to license them to commit unlawful or tortious acts or to protect them from the consequences of unlawful conduct against their employers.
The Court finds and concludes on the record before it:
(a) Plaintiff has not shown that defendant was motivated by racial prejudice or because of plaintiff's legitimate civil rights activities.
(b) Plaintiff's layoff claim under 42 U.S.C. § 1981 is barred by the statute of limitations.
(c) The Civil Rights Act does not protect activity which blocks entrance into or from an employer's plant or office.
(d) Defendant's refusal to reemploy plaintiff was based on plaintiff's misconduct, which justified the refusal to rehire.
A judgment will be entered dismissing plaintiff's complaint with prejudice.