**Percy H. GREEN, Appellant,**

v.

**McDONNELL DOUGLAS CORPORATION, Appellee.**

**No. 75–1198.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1975.

Decided Jan. 28, 1976.

---

Michael J. Hoare, St. Louis, Mo., for appellant.

Thomas C. Walsh, St. Louis, Mo., for appellee.

Before GIBSON, Chief Judge, and LAY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Appellant Percy Green has taken a timely appeal from a final order of the district court[1] denying Green's civil rights suit against McDonnell Douglas Corporation alleging racial discrimination in employment in violation of sections 703(a)(1) and 704(a) of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2(a)(1) and 2000e–3(a). The district court's memorandum opinion is reported at 390 F.Supp. 501 (E.D.Mo.1975). The district court tried the case pursuant to remand from the United States Supreme Court. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[2] We affirm the decision of the district court.

Appellant was employed by the defendant between August 1956 and August 1964 when he was laid off because of a general reduction in work force. During the period from August 1964 until July 1965 appellant participated in civil rights demonstrations including a "stall-in" during which Green and others obstructed traffic on public roads leading to and from defendant's plant.[3] Appellant was arrested and pleaded guilty to the crime of obstructing traffic in connection with his role in the "stall-in." In July 1965 appellant applied but was rejected for employment with defendant for an advertised job opening for which he was qualified. Defendant's stated reason for its refusal to rehire Green was his earlier participation in illegal demonstrations against the company.

Following defendant's refusal to rehire plaintiff, Green commenced this action in the district court alleging violations of section 704(a) (discrimination based on protected civil rights demonstrations) and, by amendment, section 703(a)(1) (discrimination based on race). The trial court dismissed the section 703(a)(1) claim because the Equal Employment Opportunity Commission had previously failed to make a finding that reasonable cause existed that a violation of that section had occurred. The court also found that defendant's refusal to rehire Green was based on Green's participation in illegal demonstrations against defendant and not on protected civil rights activity. Accordingly, relief was denied on the section 704(a) claim. The district court's memorandum opinion is reported at 318 F.Supp. 846 (E.D.Mo.1970).

On appeal a panel of this court, with one judge dissenting, reversed the trial court's dismissal of appellant's section 703(a)(1) claim and ordered a remand for trial on that issue.[4] Green v. McDonnell Douglas Corp., 463 F.2d 337 (8th Cir. 1972). The Supreme Court granted defendant's petition for writ of certiorari.

1. The Honorable James Meredith, Chief District Judge, Eastern District of Missouri.

2. Prior opinions in this case are reported at 463 F.2d 337 (8th Cir. 1972) and 318 F.Supp. 846 (E.D.Mo.1970).

3. Appellant also allegedly participated in a "lock-in" at defendant's office building in downtown St. Louis. We found in the first appeal in this case that the evidence of the extent of appellant's participation in the "lock-in" was inconclusive. 463 F.2d at 341. The Supreme Court found it unnecessary to resolve the question in view of appellant's admitted participation in the unlawful "stall-in." 411 U.S. at 796 n. 3, 93 S.Ct. 1817.

4. The panel decision affirmed the trial court's determination that illegal protests are not protected activities under section 704(a). Appellant has not appealed from that holding. The remand was required by the panel's decision, later upheld by the Supreme Court, that an Equal Employment Opportunity Commission finding of reasonable cause that a violation of section 703(a)(1) had occurred is not a prerequisite to filing a complaint in federal court. 411 U.S. at 798, 93 S.Ct. 1817.

Although agreeing with the panel majority that Green had been denied a fair opportunity for discovery and trial under his section 703(a)(1) claim on discrimination and that unlawful conduct against an employer is a valid ground for rejection, the Supreme Court nevertheless held that the majority decision "seriously underestimated the rebuttal weight to which petitioner's reasons were entitled" under the section 704(a) claim. 411 U.S. at 803, 93 S.Ct. at 1825. The Court held that defendant's stated reason—Green's unlawful protest activity directed at McDonnell Douglas Corporation—sufficed to rebut plaintiff's prima facie case. However, since Green's section 703(a)(1) claim of racial discrimination in employment was not squarely before the district court, the Court ordered a remand to the district court for the purpose of determining whether Green's conduct was used as a pretext by McDonnell Douglas Corporation for the type of discrimination prohibited by section 703(a)(1). The Supreme Court stated the relevant factual inquires on remand:

> On remand, respondent [Green] must, as the Court of Appeals recognized, be afforded a fair opportunity to show that petitioner's stated reason for respondent's rejection was in fact pretext. Especially relevant to such a showing would be evidence that white employees involved in acts against petitioner of comparable seriousness to the "stall-in" were nevertheless retained or rehired. Petitioner may justifiably refuse to rehire one who was engaged in unlawful, disruptive acts against it, but only if this criterion is applied alike to members of all races.
>
> Other evidence that may be relevant to any showing of pretext includes facts as to the petitioner's treatment of respondent during his prior term of employment; the petitioner's reaction, if any, to respondent's legitimate civil rights activities; and petitioner's general policy and practice with respect to minority employment. On the latter point, statistics as to petitioner's employment policy and practice may be helpful to a determination of whether petitioner's refusal to rehire respondent in this case conformed to a general pattern of discrimination against blacks. [Citations omitted.] In short, on the retrial respondent must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision.

411 U.S. at 804–05, 93 S.Ct. at 1826. (Footnotes omitted.)

In effect the Supreme Court, in view of the employer's statement as to its reason for discharge, stated that the employer had satisfactorily offered rebuttal evidence to the prima facie case and that the remaining issue on retrial was whether the employee could demonstrate that petitioner's assigned reason was pretextual or discriminatory in its application. The issue on remand was factual and quite narrow. We are bound by the "clearly erroneous" standard found in Fed.R.Civ.P. 52(a).

 In an attempt to prove racial discrimination appellant relies heavily on the occurrences in 1965, 1967 and 1972 of nonracial labor disputes at McDonnell Douglas Corporation. In remanding this case to the district court, the Supreme Court held that defendant's refusal to rehire plaintiff might be violative of Title VII if it were shown that white employees engaged in acts against defendant of "comparable seriousness" to those of plaintiff but were not disciplined. 411 U.S. at 804, 93 S.Ct. 1817. Green contends that the labor strikers' violence, threats, mass picketing and traffic tie-ups were at least as unlawful and disruptive as his own "stall-in" and "lock-in" activities. Several employees were arrested in connection with these labor disputes. However, those arrested were not discharged by defendant because as a part of subsequent strike-settlement negotiations all strikers were granted amnesty. The arrested workers were white. Green argues that since he, a

black man, was disciplined by defendant for similar activity and white strikers were not discharged, a case of racial discrimination has been shown. We disagree.

We think appellant's attempt to compare the lack of discipline of striking employees in the nonracial labor strikes of 1965, 1967 and 1972 with appellant's unlawful "stall-in" activities is without merit for several reasons. First, the evidence reveals that the labor strikes were participated in by both black and white employees. No preferential treatment was shown whites in defendant's decision not to discipline striking employees. Whites and blacks were treated alike. Defendant's decision not to discipline striking employees was a bargained-for agreement with the labor unions involved. In return, defendant received the union's promise to return to work immediately. It was a business decision motivated by a desire to resume production and not by any racially discriminatory reasons. As the Supreme Court said in *NLRB v. Fansteel Metallurgical Corp.*, 306 U.S. 240, 259, 59 S.Ct. 490, 497, 83 L.Ed. 627 (1939):

> The important point is that [the employer] stood absolved by the conduct of those engaged in the "sit-down" from any duty to reemploy them, but respondent was nevertheless free to consider the exigencies of its business and to offer reemployment if it chose.

Furthermore, the striking employees were attempting to improve their bargaining position with the defendant. Appellant's activities, on the other hand, were by a *non-employee* with the sole purpose of harassing the defendant. Appellant had no bargaining leverage. The record reveals no instances where defendant offered employment to a non-employee who had previously engaged in unlawful demonstrations against it.[5]

Appellant offered statistical evidence on remand to show defendant's "general policy and practice with respect to minority employment." 411 U.S. at 804–05, 93 S.Ct. at 1825. For example, appellant showed with respect to the years 1960–1965 that defendant's nonwhite work force never exceeded 6.4% of the total, while 14% of the St. Louis Standard Metropolitan Statistical Area was nonwhite. No showing was made indicating what percentage of job applicants qualified for positions with defendant were black. More relevant, we think, are percentages cited by the district court that show in 1965, the year appellant was rejected, 11% of all persons hired by defendant were nonwhite and in 1966 22% of those hired were nonwhite. Also persuasive is the district court's finding, supported by the record, that in 1965, of the trainees hired to fill the type of position appellant applied for, 15% were black. Our examination of the relevant statistical data actually supports defendant's position with respect to racial discrimination in a general sense.

■ Appellant contends that the evidence shows defendant discriminated against him with respect to his previous employment with defendant and his subsequent layoff in August 1964. Such discrimination, if true, would be relevant to appellant's current civil rights complaint under section 703(a)(1). 411 U.S. at 804. There is absolutely no evidence in the record indicating that Green was discriminated against because of his race during his employment with defendant from 1956 to August 1964. Appellant relies more heavily on his layoff in August 1964, which allegedly was necessary because of a general reduction in defendant's work force. Due to the upcoming layoff, employees in appellant's job classification were offered an opportunity to take a written examination to determine

---

5. The 1967 strike was precipitated by the discharge of Bruce McArthy, a white employee. Before an arbitrator defendant argued that McArthy's post-termination illegal conduct justified defendant's refusal to reinstate McArthy. The defendant's position, which is consistent with its position with respect to Green, was sustained by the arbitrator.

their suitability for relocation in other available positions. Appellant declined to take the test, which was administered on a voluntary basis. Appellant was unwilling to accept any position which was not the equivalent of his technician status. Under such circumstances, defendant was unable to place appellant in a position suitable to him. On August 28, 1964, appellant was laid off along with eight other technicians, all of whom were white and one of whom had better qualifications than appellant.

We conclude appellant's refusal to take the job qualification test when offered was the significant factor in his layoff. There was nothing discriminatory in its application or use. The defendant's failure to place appellant in a position acceptable to him was due to appellant's refusal to cooperate with defendant's attempt to place him in a position commensurate with his skill, ability and experience. Moreover, significantly more whites than blacks were laid off at the time appellant lost his job. Under these circumstances, we find no evidence whatsoever to support appellant's claim he was discriminated against on the basis of race during his prior employment with defendant.

Appellant argues on appeal that part of the reason for defendant's refusal to rehire him was his legitimate civil rights activities, particularly his picketing of defendant's chairman of the board of directors. Appellee contends this issue has already been decided against appellant with respect to his original section 704(a) claim, which was dismissed by this court in 463 F.2d at 337 and from which no appeal was taken to the Supreme Court. See 411 U.S. at 797 & n. 6, 93 S.Ct. 1817. Appellant contends that his original section 704(a) appeal was limited to the issue of trial court error in determining that his participation in the "lock-in" and "stall-in" demonstrations did not fall within the protection of 42 U.S.C. 2000e–3(a); further, that this court confined its holding as follows: "Accordingly, we agree with the district court that the 'stall-in' demonstration was not a protected activity." 463 F.2d at 341. Thus, appellant contends that the issue of whether appellee's reliance, in part, on Green's legitimate protests is sufficient to taint the entire decision not to rehire him was not presented to this court and therefore is not a part of the law of this case. *See Nucor Corp. v. Tennessee Forging Steel Service, Inc.,* 513 F.2d 151, 153 (8th Cir. 1975). Appellant additionally points out that the district court considered the issue in its decision.[6]

We need not reach the controversy over what is the law of the case since the issue involving the impact of Green's legitimate civil rights activities on the company's decision not to hire was tried and decided on remand. We have reviewed the record concerning the peaceful picketing of Chairman McDonnell's home and other protected activity and its effect, if any, on the decision to rehire Green. The district court found:

The defendant in this case, however, has shown by a preponderance of the evidence that the reason for plaintiff not being reemployed was because of his participation in the illegal stall-in and lock-in and not because of his race or his legitimate civil rights activities. The defendant has shown that its stated reasons were not mere pretext, but the real reasons, and these reasons are adequate under the law for defendant not to rehire the plaintiff.

390 F.Supp. at 503.[7]

---

**6.** We also note that the Supreme Court directed that on remand Green must be afforded a fair opportunity to show that the company's stated reason for rejecting Green was in fact pretext; further, that evidence that may be relevant to any showing of pretext would include facts as to the "[company's] reaction, if any, to [Green's] legitimate civil rights activities." 411 U.S. at 804, 93 S.Ct. at 1825.

**7.** In view of the district court's reference to the "lock-in," it should be noted that the district court in its opinion noted changes in Green's testimony with reference thereto and, further, that the company had produced an eyewitness who testified that the person locking the building doors was, in fact, Green himself.

We have carefully reviewed the record in this much-traveled civil rights case. The decision of the district court is supported by substantial evidence and is not clearly erroneous. Therefore, we affirm.[8]

Affirmed.

---

8. Appellant has filed a motion in the circuit court to strike appellee's brief for noncompliance with Rule 28. The motion is without merit and is denied.