**Harvey L. GATES, Plaintiff,**

v.

**ITT CONTINENTAL BAKING CO., Defendant.**

**No. C82–3302A.**

United States District Court, N.D.Ohio, E.D.

Jan. 9, 1984.

John L. Wolfe, Hershey & Browne, Akron, Ohio, for plaintiff.

Gary W. Spring, Akron, Ohio, Gregory J. Schroedter, Martin P. Szostak, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

DOWD, District Judge.

Plaintiff filed the present suit alleging a violation of his rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a) and 42 U.S.C. § 1981. The plaintiff's claim pursuant to 42 U.S.C. § 1981 was tried to a jury[1] which, on October 20, 1983, rendered a verdict on behalf of the plaintiff, Harvey L. Gates. As plaintiff's claim pursuant to § 2000e–2(a) was retained by the Court, the Court must initially rule on the plaintiff's claim pursuant to 42 U.S.C. § 2000e *et seq.*

In *Moore v. Sun Oil Co. of Pa.,* 636 F.2d 154 (6th Cir.1980), the Court held that when both equitable and legal claims are presented pursuant to Title VII and § 1981, the plaintiff shall have a right to a jury trial on the legal claims stated pursuant to § 1981 and the facts common to both the legal and equitable claims. *See also Jones v. Metropolitan Hospital and Health Centers,* 88 F.R.D. 341 (E.D.Mich.1980); *Bibbs v. Jim Lynch Cadillac, Inc.,* 653 F.2d 316 (8th Cir.1981).

The jury in the present case rendered a verdict on behalf of the plaintiff and against the defendant, ITT Continental Baking Co., on October 20, 1983. To assist the jury in reaching its verdict, the Court submitted a set of interrogatories to the jurors as follows:

We, the jury, having been duly impanelled and sworn, do hereby answer interrogatory no. 1 as follows:

### Interrogatory No. 1

Has the plaintiff proved by a preponderance of the evidence the following:

(a) that he is a member of a protected racial group, such as being a black minority employee?—*yes*

(b) that he was terminated from his employment?—*yes*

(c) that a white employee holding a position similar to that of the plaintiff engaged in conduct similar to that of the plaintiff, i.e., the use of drugs and alcohol on the job?—*yes*

(d) if the answer to (c) above is "yes" that the defendant was aware of the white employee's conduct and treated the white employee in a manner different than the plaintiff?—*yes*

(e) if the answer to (d) above is "yes," that any difference in the treatment of the plaintiff from the white employee was the result of purposeful, intended discrimination by the ITT Continental Baking Co., Inc., on account of the plaintiff's race?—*yes*

42 U.S.C. § 2000e–2(a) provides:

(a) it shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; ...

Accordingly, in order to find racial discrimination pursuant to Title VII, an individual must show that an employer discharged him because of his race. The plaintiff in the present case alleges that the defendant treated black employees, who engaged in

---

1. The plaintiff requested and was entitled to a jury trial on his legal claim pursuant to § 1981. *Moore v. Sun Oil Co. of Pa.,* 636 F.2d 154 (6th Cir.1980). However, the Court retained plaintiff's claims pursuant to § 2000e *et seq.* as only equitable relief is available. *Moore, supra* at 157.

conduct similar to white employees, differently than white employees on the basis of race. *Teamsters v. United States*, 431 U.S. 324, 335–36, n. 15, 97 S.Ct. 1843, 1854, n. 15, 52 L.Ed.2d 396 (1977).[2] To recover pursuant to § 2000e *et seq.* on a disparate treatment theory of discrimination, the plaintiff must show that he is a member of a protected racial group, and that he was treated less favorably than others because of his race.

 As noted above, the jury specifically found that the plaintiff was a member of a protected racial group, that he was terminated from his employment, that white employees, employed in capacities similar to the plaintiff, engaged in conduct similar to that of the plaintiff, of which the employer was aware, that the employer treated the plaintiff in a manner differently than the white employee and that any difference in treatment between the plaintiff and the white employee was the result of purposeful, intended discrimination on the part of the defendant on the basis of the plaintiff's race.

Accordingly, in ruling upon the plaintiff's claim pursuant to § 2000e, the Court, bound by the jury's determination of facts, finds that the defendants have violated the plaintiff's rights pursuant to 42 U.S.C. § 2000e–2(a).

Consequently, the Court, in light of the facts as found by the jury, must now determine whether the plaintiff is entitled to equitable relief. *Moore, supra.* at 157; *Jones, supra* at 344.[3]

The plaintiff in his complaint sought relief in the form of reinstatement, back pay, compensatory and punitive damages. At the close of the trial, the Court granted defendant's motion for a directed verdict as to the issue of punitive damages. The plaintiff's claim for compensatory damages was submitted to the jury which assessed damages against the defendant in the amount of $35,000.00. Accordingly, the Court must now determine whether the plaintiff is entitled to reinstatement and backpay, and, if so, the extent of such relief.

42 U.S.C. § 2000e–5(g) provides in part: If the Court finds that the respondent has intentionally engaged in or is intentionally engaging in unlawful employment practice charged in the complaint, the Court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatemental hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the Court deems appropriate. Back pay liability shall not accrue from the date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable ...

In *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), the Supreme Court held "it follows that, given a finding of unlawful discrimination, back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making per-

---

**2.** The Court in *Teamsters,* n. 15 noted: "disparate treatment such as is alleged in the present case is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment."

**3.** In *Jones,* the Court noted: "it is therefore clear in the instant case that the jury must determine all fact issues that are common to both the legal and equitable claims. If, after that, there are any other issues that are equitable in nature, the Court will determine them. The Court will make a determination based upon the finding of the jury of the disposition of the equitable claim."

sons whole for injuries suffered through past discrimination." [4]

The defendant in the present case alleges that as the plaintiff admitted at trial to using drugs and alcohol on the job, the company had a valid basis for terminating the plaintiff.

In *Day v. Matthews*, 530 F.2d 1083 (D.C. Cir.1976), the court held that a prevailing plaintiff in a Title VII case should be awarded back pay and retroactive promotion or reinstatement unless the defendant can prove by clear and convincing evidence that the plaintiff would not have been hired, promoted, etc., even if there had been no discrimination. Furthermore, § 2000e–5(g) provides:

> No order of the Court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement, or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin, or in violation of § 2000e–3(a) of this Title.

■ Reinstatement has been denied when an employee was discharged because of his own inexcusable employment activities, unjustified by any discriminatory action of the employer. *Green v. McDonnell Douglas Corp.*, 318 F.Supp. 846, 851 (E.D. Mo.1970), reversed on other grounds, 463 F.2d 337 (8th Cir.1972), remanded on other grounds 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In the present case, however, the jury specifically found that a white employee had engaged in the use of drugs while on the job and that the employer was aware of such behavior, and treated the white employee in a manner different than the plaintiff who was terminated. The Court consequently, finds that the defendants have failed to sufficiently prove that the plaintiff would have been terminated absent any discriminatory motive.

The plaintiff requests that he be awarded back pay. In *Head v. Timken Roller Bearing Co.*, 486 F.2d 870, 876 (6th Cir. 1973), the Sixth Circuit held "The finding of discrimination by the district court, in addition to the nature of the relief (compensatory as opposed to punitive), and the clear intent of Congress that the grant of authority under Title VII should be broadly read and applied, mandate an award of back pay unless exceptional circumstances are present." In *Los Angeles Dept. of Water and Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), the Supreme Court noted that the *Albemarle* presumption in favor of retroactive liability can seldom be overcome. As noted above, the Court finds that the defendant has failed to submit sufficient evidence indicating that an award of back pay in the present case is inappropriate.

■ The Court finds that the plaintiff has established the fact that he sustained an economic loss resulting from the defendants' discrimination. Accordingly, the Court finds that the plaintiff should be awarded an amount of back pay based upon the amount he would have received but for the defendants' illegal discrimination. In arriving at a proper award for back pay the Court shall consider the plaintiff's salary, fringe benefits, and interim earnings.

The plaintiff was discharged effective October 19, 1981. At the time the plaintiff was discharged he was earning $22,152.00 per year.

■ The defendant relies upon the case of *Reid v. Memphis Publishing Co.*, 369 F.Supp. 684 (W.D.Tenn.1973), modified on other grounds 521 F.2d 512 (6th Cir.1975), *cert. denied* 429 U.S. 964, 97 S.Ct. 394, 50 L.Ed.2d 333 (1976), for the proposition that

---

**4.** A number of courts have assumed, without discussion, that the presumption created by the Supreme Court in *Albemarle Paper Co. v. Moody,* in favor of awarding back pay, applies equally to awarding reinstatement. *See McCormick v. Attala County Board of Education,* 541 F.2d 1094 (5th Cir.1976).

the plaintiff is not entitled to recover fringe benefits as a component of back pay. Upon review of the decision in *Reid,* the Court finds that the Court in *Reid* failed to give any explanation for its rationale in failing to include fringe benefits in an award of back pay. The Court notes that a number of cases have included fringe benefits in an award of back pay. *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 263 (5th Cir.1974); *Danner v. Phillips Petroleum Co.,* 447 F.2d 159 (5th Cir.1971); *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1021 (1st Cir.1979). *See also Schlei,* Employment Discrimination Law p. 1440. In keeping with the "make whole" purpose of Title VII, the Court finds that fringe benefits shall be included in an award of back pay.[5]

Additionally, although the defendant asserts that the plaintiff failed to submit any evidence that he suffered any economic loss as a result of not being covered under the defendant's hospitalization plan, the parties in their agreed upon statement of undisputed facts, filed October 4, 1983, indicated that the plaintiff's fringe benefits amounted to approximately 36% to 37% of his base pay.

Accordingly, the Court finds that fringe benefits should be included in the plaintiff's award of back pay.

 Finally, the Court notes that the plaintiff's interim earnings should be deducted from the amount the plaintiff would have earned, but for the defendant's discrimination. § 2000e-5(g) specifically provides "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." Subsequent to his termination, the plaintiff held several different jobs. However, none of the jobs provided the plaintiff with the substantial responsibility or salary which he received from the defendant prior to his termination. Accordingly, the Court finds that the plaintiff is entitled to recover as back pay the following amount:

| | | |
|---|---|---|
| a. | wages for two years and one month (10–19–81 to the present at $22,152.00 per year)[6] . . . | $46,008.00 |
| b. | the amount of plaintiff's fringe benefits (36% of $22,152.00/yr. from 10–19–81 to the present) . . . | $16,614.00 |
| c. | amounts plaintiff earned subsequent to his termination . . . | ($10,745.00) |
| | from 10–5–82 to 12–31–82 . . . $1,672.50 | |
| | first part of 1983 . . . 3,100.00 | |
| | Nates Auto Clean . . . 4,772.50 | |
| | Since 8–8–83 . . . 1,150.00 | |
| | Tips . . . 50.00 | |
| | $10,745.00 | |
| | Total . . . | $51,877.00 |

Accordingly, in light of the foregoing, the Court finds that the plaintiff is entitled to recover as an award of back pay $51,877.00.

 Additionally, the defendant asserts that the Court in its discretion, should deny plaintiff's request for reinstatement on the basis that the defendant entertains serious doubts as to whether the plaintiff has the ability to perform his job and furthermore, that the present litigation has embittered the parties to such an extent that the plaintiff could not realistically be re-employed by the defendant. In view of the fact that Gates admitted at trial that he used drugs and drank alcoholic beverages while acting

---

**5.** In *Albemarle, supra,* 422 U.S. at 421, 95 S.Ct. at 2373, the Court, reviewing a section-by-section analysis accompanying a conference committee report on the 1972 Act by Senator Williams, concerning the "make whole" purposes of Title VII noted:

The provisions of this subsection are intended to give the courts wide discretion exercising their equitable powers to fashion the most complete relief possible. In dealing with the present section 706(g), the courts have stressed that the scope of relief under that section of the Act is intended to make the victims of unlawful discrimination whole, and that the attainment of this objective rests not only upon the elimination of the particular unlawful employment practice complained of, but also requires that persons aggrieved by the consequences and effects of the unlawful practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination. 118 Cong.Rec. 7168 (1972).

**6.** The Court finds that plaintiff's entitlement to back pay extends from the date he was terminated full entry of judgment against the defendant. Accordingly, the plaintiff is entitled to back pay for a period of two years and one month.

in a supervisory capacity over a substantial number of employees at ITT Continental Baking Co., the Court, in its discretion finds that the plaintiff's reinstatement as a foreman or in any other capacity at the Columbus, Ohio plant where the plaintiff was working when terminated is inappropriate, given the available alternatives. However, with respect to the defendants' objections to reinstatement in general, the Court finds an absence of any evidence that the plaintiff is unable to function as a production worker in a bakery operated by the defendant. The evidence presented was to the contrary. Furthermore, the Court finds no evidence of embitterness which would interfere with the plaintiff's ability to function as a capable production worker for the defendant in one of its bakeries.

In a post trial brief the plaintiff has indicated by affidavit a willingness to return to the employment of the defendant as a production worker rather than as a foreman. However, counsel for the defendant in a post trial brief has raised concern about the ability of the defendant to reinstate the plaintiff as a production worker due to the constraints of the defendant's collective bargaining agreement as it relates to production workers.

The Court finds that reinstatement of the plaintiff as a production worker in either a Cleveland area bakery or an Akron area bakery operated by the defendant is appropriate equitable relief.

Accordingly, the Court orders the reinstatement of the plaintiff forthwith to the position as a production worker in either a Cleveland area bakery or an Akron area bakery operated by the defendant. In the event the plaintiff is not reinstated forthwith, the plaintiff will be entitled, upon application with the Court, to an order requiring payment of wages to the plaintiff on the basis of a 40 hour week less deductions for federal, state and local income tax, FICA. Additionally, in the event the defendant fails forthwith to reemploy the plaintiff, the defendant shall be responsible for all necessary medical, hospital and dental expenses that would otherwise have been payable pursuant to medical, hospital and dental insurance available to production workers of the defendant. The Court further orders that in the event the defendant fails to reinstate the plaintiff as a production worker in either a Cleveland area or Akron area bakery of the defendant within one year of the date the order requiring reinstatement is filed, the defendant will then be required to reinstate the plaintiff in a supervisory position in either a Cleveland area bakery or an Akron area bakery of the defendant comparable to the supervisory position held by the plaintiff at the time of his discharge.

The plaintiff also requests an award of attorneys fees pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e–5(k.) [7]

■ A prevailing plaintiff should ordinarily recover attorney's fees unless special circumstances would render an award of such unjust. *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), the court dealing with

---

**7.** § 1988 provides in pertinent part: "In any action or proceeding to enforce a provision of §§ 1977, 1978, 1979, 1980, and 1981 of the Revised Statutes [42 U.S.C. §§ 1981, 1983, 1985, 1986] ... the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorneys fees as part of the cost."

§ 2000e–5(k)·provides: "In any action or proceeding under this Title [42 U.S.C. § 2000e *et seq.*] the Court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney fee as part of the cost, and the Commission of the United States shall be liable for costs the same as a private person."

In *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 n. 7 (1983), the Court noted that the legislative history of § 1988 indicates that Congress intended that "the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act" in cases dealing with an award of attorneys fees to "a prevailing party."

an award of attorneys fees pursuant to Title II [8] noted:

> If successful plaintiffs were routinely forced to bear their own attorney's fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees—not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II.

Accordingly, the Court must determine whether plaintiff is a prevailing party and, in addition, whether there are any special circumstances which would render an award of attorney's fees unjust.

In *Hensley, supra,* the Court held that "plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeeded on any significant issue in litigation which achieved some of the benefit of the parties sought in bringing suit." Furthermore, the Court noted:

> ... the plaintiff's success is a crucial factor in determining the proper amount of award of attorney's fees under 42 U.S.C. § 1988. If the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a law suit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. Where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

The plaintiff in the present case, pursuant to the jury's verdict, prevailed on his claims pursuant to § 1981 and § 2000e–2(a) on the basis that the plaintiff was terminated from his employment on the basis of his race. The plaintiff, however, did not prevail on his claims pursuant to 42 U.S.C. §§ 1983, 1985, or his claim for punitive damages.

The District Court dismissed the plaintiff's claim pursuant to § 1983 as the plaintiff failed to allege any state action on behalf of the defendant. The Court, in its order dated September 23, 1983, specifically found that the theory of state action alleged by the plaintiff in support of his action pursuant to § 1983 had been previously rejected by the Sixth Circuit in *Watson v. Kenlick Coal Co.*, 498 F.2d 1183, 1193 (6th Cir.1974). Additionally, the defendants claim pursuant to § 1985 alleging a conspiracy between the defendant AAA Investigations was directed out at the end of the plaintiff's case. Similarly, the Court granted a directed verdict after all the evidence was submitted as to plaintiff's claim for punitive damages. Upon review, the Court finds that the plaintiff failed to prevail on the separate and distinct claims alleging the violation of his rights pursuant to state action, a conspiracy in violation of his rights, and a willful violation of his rights entitling him to punitive damages.

■ Accordingly, the Court finds that although the plaintiff ultimately prevailed on his claims pursuant to 42 U.S.C. § 1981, and § 2000e *et seq.* the plaintiff should not be awarded any attorney's fees for the time spent pursuing his claims pursuant to 42 U.S.C. §§ 1983, 1985 or his claim for punitive damages.

Finally, the Court notes that the defendants have failed to assert any "special circumstances" which would render an award of attorney's fees in the present case unjust.

Accordingly, plaintiff's motion for attorney's fees is granted. The case shall be set for hearing on January 30, 1984 at 3:30

---

8. The rule enunciated in *Piggie Park Enterprises* concerning an award of attorney's fees under Title II has been applied to employment discrimination cases under Title VII. *Albemarle, supra,* 422 U.S. at 415, 95 S.Ct. at 2370.

p.m. for the purpose of determining a reasonable award of attorney's fees.

IT IS SO ORDERED.