Jeanne **HARRINGTON**, Plaintiff,

v.

**VANDALIA–BUTLER BOARD OF EDUCATION**, Defendant.

Civ. No. C–3–74–73.

United States District Court, S. D. Ohio, W. D.

Aug. 18, 1976.

Barbara Kaye Besser, Cleveland, Ohio, Randal S. Bloch, Cincinnati, Ohio, for plaintiff.

Larry A. Smith, Dayton, Ohio, for defendant.

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

CARL B. RUBIN, District Judge.

This matter is before the Court following a trial on the merits at which testimony and evidence was presented and upon pretrial and post-trial memoranda. In accordance with Rule 52 of the Federal Rules of Civil Procedure, the Court does submit herewith its findings of fact, opinion, and conclusions of law.

### FINDINGS OF FACT

#### I.

1. At all times pertinent to this litigation plaintiff Jeanne Harrington held a teaching certificate authorizing her to instruct in the subjects of physical education and social studies. The defendant is a local school board, organized and existing under the laws of the State of Ohio. Among other schools within its jurisdiction is Morton Junior High School, located in the City of Vandalia, Montgomery County, Ohio.

██ The defendant Board is an employer within the meaning of Title 42 U.S.C. § 2000e(b).

2. Plaintiff was hired by the defendant Board in 1957 to teach social studies and to

serve as a guidance counselor. In 1958 or 1959 plaintiff was assigned the exclusive duty of teaching girls' physical education at the Morton Junior High School.

Plaintiff instructed in this position until June of 1972, at which time she was notified by the defendant of transfer to another school and assignment to teach social studies. Plaintiff declined to accept such reassignment and accepted instead voluntary disability retirement.

As of June, 1976, plaintiff appears to be substantially disabled by a hearing loss and does not appear to be physically able to instruct students in subjects for which she holds certificates.

At no time between 1957 and 1972 did the plaintiff possess the academic credentials that would qualify her for "tenure" as the same is defined in Ohio Revised Code § 3319.11.

3. Subsequent to the events of June of 1972, plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission. All appropriate procedural requirements were met prior to the instituting of suit in the United States District Court.

4. At all times pertinent Morton Junior High School contained approximately the same number of male and female students. As a junior high school it provided instruction at the 7th, 8th and 9th grade levels. Separate facilities for instruction in physical education were maintained. Girls gym classes were held in the Girls' Gym, located in a basement and almost entirely under ground. Small windows near the ceiling were removed during the year 1970. Ventilation was thereafter provided by ventilating fans located in the ceiling.

Girls' physical activities were conducted on two levels: an area known as the "deck" was used for instruction in bowling while the gym proper, approximately one floor below, was used for all other activities. While it is possible for the physical education instructor to observe both levels from a stairway landing, any instructional efforts at either level would remove the other from her observation.

The Girls' Gym lacked natural light and natural ventilation and the artificial light and ventilation created unsatisfactory physical surroundings. Plaintiff was provided with a small office adequate only for a desk and filing cabinet. No private shower or toilet facilities were provided for her.

5. Boys' physical education was conducted in a structure known as the "Field House". The floor area of the Field House is substantially larger than that of the Girls' Gym. There is natural light and ventilation from two levels of windows and both the locker room and shower facilities are larger than those provided in the Girls' Gym.

An office for male physical education teachers is available with a private toilet and shower facilities. During the period in question plaintiff was the sole instructor in physical education for girls while instruction in physical education for boys was provided by two male gym teachers, each of whom devoted one-half of his time to physical education and the other half to academic subjects.

6. Salaries paid to physical education instructors depend in the first instance upon the academic credentials of the teacher as well as length of service. No evidence was presented that there exists any differential for similarly qualified instructors on a male v. female ratio.

Where an instructor in physical education performs services for intramural activities, he is compensated by an additional supplementary contract in the amount of six percent (6%) of the amount of his base contract. While this percentage might involve a difference in total compensation paid, such difference is based upon the basic salary rather than upon a difference based upon sex. Plaintiff has failed to establish by a preponderance of the evidence that she was penalized in terms of salary for work done equivalent to that of male teachers.

7. The Field House is not used exclusively for instruction in physical education

and for boy intramural activities. It has also been used consistently for interscholastic competition.

By reason of demand for seating, in approximately 1966 a portion of the structure was converted from an instructional area to spectator bleachers. Prior to this time both boys' and girls' physical education classes were held in the Field House. Subsequent to 1966 all girls' activities were moved to the Girls' Gym. At a time subsequent to 1972 a joint use of the two gymnasia began. Physical education teachers began instructing classes irrespective of sex and co-educational gym classes were likewise instituted. No material alteration of any facilities were required for this joint use.

8. During the spring of 1972 relations between plaintiff and administrative officials of the defendant substantially deteriorated. Exception was taken to plaintiff's circulation of a survey regarding physical education facilities and the enlistment of parents in her conflict with the defendant administration.

For the academic year 1971–1972, the plaintiff was evaluated by the principal of Morton Junior High School, Ralph Clay. This evaluation (Plaintiff's Exhibit 8) contains 25 categories. Plaintiff was evaluated at "average" in 18 of these categories and "above average" in 7. No evaluation in the categories: "Poor", "Needs Improvement", or "Outstanding" was recorded. The overall evaluation was held to be "Average".

In contrast, from March 2, 1972 to May 17, 1972, 18 separate annotations of unsatisfactory performance were entered in plaintiff's file. (Plaintiff's Exhibits 14–27, inclusive). While defendants have used the term "observation" the preponderance of evidence has indicated that the appropriate word for the activity was "surveillance". Such intensive surveillance constituted harassment of plaintiff and interfered with her instructional efforts.

9. Plaintiff has established by a preponderance of the evidence that the athletic program, facilities and equipment during the period of time in question was substantially inferior for girl students. Plaintiff has not established standing to raise this question and, except as hereafter provided, may not recover for such discrimination.

Plaintiff has not established by a preponderance of the evidence that she was discriminated against in terms of salary or in terms of job description. Plaintiff has established by a preponderance of the evidence that her working conditions were inferior to those of male teachers performing the same services, that the nature of the facilities was such that she could not properly supervise her entire class at the same time and that she was handicapped by unsatisfactory working conditions and inadequate equipment. Plaintiff has, therefore, established by a preponderance of the evidence, a prima facie violation of § 704(a) of Title VII. Defendant has not sustained its burden of proof to justify such prima facie discrimination.

## OPINION

### II.

It is clear from the foregoing findings of fact that this case does not fit within the mold of most sex discrimination cases. The underlying disparity in working conditions, however, is no less actionable under Title VII than discriminatory wages, hours, or hiring practices. As was stated in *Rogers v. E. E. O. C.*, 454 F.2d 234 (5th Cir. 1971), *cert. denied* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972):

> . . . [T]oday employment discrimination is a far more complex and pervasive phenomenon, as the nuances and subtleties of discriminatory employment practices are no longer confined to bread and butter issues.
> 454 F.2d at 238.

That the plaintiff's students were the primary victims of the defendant's actions does not detract from Mrs. Harrington's right to equality in her working environment. *Rogers v. E. E. O. C., supra.*

■ Citing *Washington v. Davis,* —— U.S. ——, 96 S.Ct. 2040, 48 L.Ed.2d 597 (Decided June 7, 1976), defendant contends that, unless plaintiff proves intentional acts of discrimination, she may not recover under Title VII. Nothing in the *Washington* case supports this proposition. Indeed, the holding of *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) was reaffirmed in *Washington* : "Congress directed the thrust of the Act to the *consequences* of employment practices, not simply the motivation." 401 U.S. at 432, 91 S.Ct. at 854. *See, Albemarle Paper Co. v. Moody,* 422 U.S. 405, 422–423, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

Having found a violation of the Act, the Court must now determine the scope of the remedy to be imposed. Defendant argues that *E. E. O. C. v. Detroit Edison Co.,* 515 F.2d 301 (6th Cir. 1975) precludes this Court from granting any relief in this case, since plaintiff is not entitled to backpay and damages may not be awarded. The Court is unwilling to accept defendant's suggestion that plaintiff may have a right but not a remedy. The precise holding of *Detroit Edison Co., supra* as to this particular issue is as follows:

> While affirmative action may not be limited to the reinstatement or hiring of employees with or without backpay, we believe that it is limited to relief of the same general kind, that is, equitable relief in the form of restitution.
>
> 515 F.2d at 309.

We do not read this language as precluding all compensatory relief in furtherance of this Court's equitable power to make plaintiff whole. As the Supreme Court noted in *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975):

> '[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to *adjust their remedies so as to grant the necessary relief.*' *Bell v. Hood,* 327 U.S. 678, 684, [66 S.Ct. 773, 777, 90 L.Ed. 939] (1946) (Emphasis added).

■ Plaintiff is not entitled to an award of back pay nor to reinstatement to her former position because of her present physical disability. Plaintiff is entitled to an award for discriminatory working conditions and the Court does determine that the appropriate compensation therefore is Six Thousand Dollars ($6,000.00), computed on the basis of One Thousand Dollars ($1,000.00) per year for the years 1966–1972. As prevailing party, plaintiff is entitled to an award for reasonable attorney fees and the Court does assess that sum at Two Thousand Dollars ($2,000.00).

## CONCLUSIONS OF LAW

### III.

1. This Court has jurisdiction over this matter in accordance with 42 U.S.C. § 2000e–5(f)(3).

■ 2. Where a plaintiff performs equivalent services for equivalent pay, under working conditions substantially inferior to that of co-workers performing the same service for the same pay, such plaintiff establishes a right to recovery.

3. The prevailing party in a discrimination action of this sort is entitled to reasonable attorney fees in accordance with 42 U.S.C. § 2000e–5(k).

4. In accordance with the foregoing, plaintiff is hereby awarded the sum of Six Thousand Dollars ($6,000.00) as compensation and the sum of Two Thousand Dollars ($2,000.00) as reasonable attorney fees together with costs.

LET JUDGMENT ISSUE IN ACCORDANCE WITH THE FOREGOING.