Mack SCOTT et al., Plaintiffs,

v.

The CITY OF ANNISTON, ALABAMA, et al., Defendants.

Civ. A. No. 75–G–0125–E.

United States District Court, N. D. Alabama, E. D.

March 31, 1977.

George C. Longshore, Cooper, Mitch & Crawford, Birmingham, Ala., for plaintiffs.

John R. Phillips, Anniston, Ala., for Anniston Civil Service Board, Cecil Miller and Richard Sawyer.

Richard B. Emerson & Galbraith, Anniston, Ala., for City of Anniston, Norwood Hodges, Charles A. Daugherty, Dr. Robert C. Simmons, Jr., Dr. Gordon A. Rodgers and Eugene Stedham.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GUIN, District Judge.

This is a civil action for injunctive relief, damages, a declaratory judgment, attorney's fees, and other appropriate relief, brought on behalf of a class under the Civil Rights Act of 1964, as amended in 1972, 42 U.S.C. § 2000e, et seq., and under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and predicated upon alleged violations by the defendants, The City of Anniston, Alabama, the Mayor and Councilmen of the City of Anniston, Alabama, and the Chairman and Members of the Civil Service Board of the

City of Anniston, Alabama (hereinafter sometimes referred to collectively as "the defendants"). The parties have stipulated that the case is appropriate for class action treatment. The class is composed of all past, present and future black employees in the public works department of the City of Anniston who were at work on or after December 2, 1972.

The court has severed issues of back pay from the issue of liability. The class issues presently pending before the court relate to whether defendants have been guilty of racial discrimination with regard to hiring, promotion and tenure of employment. More specifically, the principal issue revolves around the defendants' promotion practices. The court will deal first with the class issues and then address itself to the individual issues involving Mack Scott, Edward A. Spears, and Earnest Hall.

The court, having fully considered the pleadings, all of the testimony, exhibits and other evidence adduced in the course of this case, and having carefully reviewed the briefs, and having heard the argument of counsel, now makes and finds the following facts and makes the following conclusions of law, pursuant to Rule 52(a), Federal Rules of Civil Procedure:

## FINDINGS OF FACT

1. This action, seeking injunctive relief and damages, is predicated upon alleged violations by the defendants of the Civil Rights Act of 1964, as amended in 1972, 42 U.S.C. § 2000e, et seq.

2. The plaintiff, as mentioned above, is a class composed of all past, present and future black employees in the public works department of the City of Anniston, Alabama, who were at work on or after December 2, 1972, who are represented by certain named plaintiffs.

3. The defendants are The City of Anniston, Alabama, the Mayor and Councilmen of the City of Anniston, and the Chairman and Members of the Civil Service Board of the City of Anniston.

4. The public works department is composed of the following subdepartments: engineering, garage, electrical, street, sanitation, and building and grounds. There is a total of 26 jobs in the public works department, with 15 separate pay levels. As of the fourth quarter, 1975, there was a total of 144 employees, of which 83 were white and 61 black.

5. Historically, black employees have held only the lowest paid jobs in the public works department. Historically, blacks were relegated to labor jobs only.

6. The hiring, promotion, salary, and removal of employees in the public works department of the City of Anniston are covered by a Civil Service Act.[1] Said Act creates a Civil Service Board of the City of Anniston and provides, among other things, that the Board shall have the power to make rules and regulations governing examinations, eligible registers, appointments, transfers, salaries, demotions, annual and sick leave, and such other matters as may be necessary to accomplish the purposes of the Act; that all employees shall be appointed upon a nonpartisan merit basis; that said Board "shall (1) classify the different type of services to be performed in the service of the city; (2) prescribe qualifications, including those of education, training, and experience, for the appointees and incumbents of each class; (3) with the approval of the appointing authority, fix a maximum and minimum salary for each class; and (4) allocate each job in the service to its proper class." The Act further provides that the salary to be paid to each employee shall be within the pay plan and pay rules and regulations established by the Board and shall be no more than the Board approves; and that examination shall be practical in character and shall relate to those matters which test the ability of the person examined to discharge intelligently the duties of the position for which he applies.

1. Act No. 592, 1953 Regular Session of the Alabama Legislature.

7. Pursuant to the Civil Service Act referred to hereinabove, the Civil Service Board of the City of Anniston has adopted rules and regulations which, in part, provide that examination may be oral or written or both, and may contain performance tests where the Board deems necessary.[2]

8. The Civil Service Board purchases its written examination, when given, from Public Personnel Association in Chicago, Illinois. The defendants, independently of said Public Personnel Association, have not caused a validation study to be made of said examinations. Said Association, however, testified that pertinent examinations have been validated.

9. The department of public works for the City of Anniston has been analyzed from the standpoint of (1) incumbent white versus black in each of the 15 separate wage levels, (2) a comparison of current (fourth quarter 1975) average monthly income as broken down into year of hire, and (3) a comparison of the average income of black employees versus white employees. Of a total of 26 discrete jobs in the department, only three have ever been held by blacks: laborer, utility laborer, and equipment operator one. These positions are close to the lowest paying jobs in the department. In the order of ranking from the bottom, these three jobs rank three, four, and five.

The "year employed" analysis (plaintiff's exhibit 11–A) reveals a wage disparity between black and white employees which cannot be explained solely on the basis of length of service, that is, that blacks have less seniority than whites. On a decade-by-decade breakdown the following appears:

| Year Employed | White | Black |
|---|---|---|
| 1944 - 1950 | 4 | 1 |
| 1950 - 1960 | 8 | 6 |
| 1960 - 1970 | 22 | 34 |
| 1970 - 1975 | 18 | 16 |

Therefore, although the black employees have tended to remain at work in approximately the same numbers as whites, they have remained in lower paying jobs, while white employees have moved ahead in earnings.

Of the 26 years listed on plaintiffs exhibit 11–A, there is a basis for comparison for 13 of those years. In 12 of the 13 years whites make more than blacks, and in the remaining year (1955) income is the same. This study also reveals that the longer the employment, the greater the disparity. However, the study also shows that the disparity has decreased from 1950 to the present time:

| Year Employed | Average White | Average Black | Disparity |
|---|---|---|---|
| 1944 - 1950 | $ 859.00 | $ 581.00 | $ 278.00 |
| 1950 - 1960 | 1,027.00 | 643.00 | 394.00 |
| 1960 - 1970 | 766.00 | 565.00 | 201.00 |
| 1970 - present | 684.00 | 544.00 | 130.00 |

The overall average disparity indicated by the table, with blacks earning a monthly average of $602.00 compared to $789.00 for whites, amounts in income to $186.70 (plaintiff's exhibit 11).

10. The defendants have affirmatively sought to recruit blacks to be employees of and to enhance their job opportunities with the City of Anniston. On numerous occasions, officials of the City have met with black leaders of the black community in the city to encourage them to have blacks apply for jobs other than laborers.

11. Historically, black applicants have done poorly on written examinations. In 1971 ten employees (nine blacks and one white) were promoted to equipment opera-

2. Civil Service Act and the Rules and Regulations of the Civil Service Board of the City of Anniston, Alabama, revised 1970, page 10.

tor one by signing their names *only* on some papers and going to an oral test. In many instances where applicants, particularly blacks, failed written examinations for promotion to equipment operator one, the defendants gave performance examinations conducted by a black equipment operator not connected with the City, and practically all of the applicants taking these performance examinations passed them. After passing the performance examinations, blacks were given preference over whites in being promoted to and given the position of equipment operator one.

12. The Civil Service Board on numerous occasions has abolished various eligibility registers or lists, either because there were no blacks originally on them or because no blacks remained on them, as a result of their having been certified to the appointing authority.

13. The court finds that the Civil Service Board of the City of Anniston does not and has not discriminated against persons on the basis of their race when such persons have appealed to the Civil Service Board as a result of personnel action taken against them. Indeed, Mr. Ellis Greer, a black, who is also a present member of the Board, and a present member of a labor union, testified that in his opinion the Board does not discriminate against whites or blacks.

14. The court finds that any black who has passed one of the job-related written examinations, regardless of his position in passing it, is in effect certified along with any other white employee—white applicants or anyone else, regardless of their standing.

15. The court will now address itself to findings of fact concerning the individual complaint of plaintiff Mack Scott. Plaintiff Mack Scott alleged that his lost employment as a laborer in the sanitation department of the City resulted from an unlawful employment practice.

16. Due to problems and complaints concerning garbage collection, resulting from the system of garbage collection in effect at that time, the city manager of Anniston decided to put the public works department on an eight-hour work shift. The previous garbage collection system, commonly referred to as the "task force work," allowed each individual crew to cease working for the day, regardless of the number of hours they had worked, when they had completed collection in their assigned territory.

17. A meeting of the employees in the public works department was held on January 8, 1974, at which time the employees were informed of the change in working hours. Mack Scott did not attend the meeting and it was Friday, January 11, 1974, before he learned that he would have to go on an eight-hour shift. The change to the eight-hour shift became effective on Monday, January 14, 1976.

18. At the time the change from the task force to the eight-hour shift was made, Scott had a job in Blue Mountain, Alabama, where he worked from 10:00 P.M. until 6:00 A.M. His job, or shift, with the City of Anniston under the eight-hour shift was scheduled for 4:00 P.M. to 12:00 P.M., conflicting to the extent of two hours with his job at Blue Mountain.

19. The testimony conflicted at this point concerning whether plaintiff Scott attempted to swap his shift job with someone else within the sanitation department, thus allowing him to keep both the job with the sanitation department and the job at Blue Mountain. The court resolves this conflict in testimony against Mr. Scott, and finds, as did the grievance committee to which this matter was referred, that Mr. Scott's failure to attend his regularly scheduled shift on January 14, 1974, was not due to an attempt on his part to swap shifts with another employee in the sanitation department. Therefore, Mr. Scott's termination was justified and was not based upon racial considerations.

20. With respect to named plaintiff Earnest Hall, the court finds that he was employed as a laborer with the City, that he never made application for promotion in the public works department of the City of Anniston, that his employment with the City of Anniston was terminated on Febru-

ary 13, 1976, and that said termination was not based upon racial discrimination.

21. With respect to named plaintiff Edward A. Spears, no evidence was introduced at the trial of this matter regarding Mr. Spears, and therefore the court can make no findings concerning him other than those applicable to the class in general.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of this cause under the Civil Rights Act of 1964, as amended in 1972, Title VII, 42 U.S.C. § 2000e, et seq.

2. Alleging racial discrimination under Title VII of the 1964 Civil Rights Act with regard to hiring, promotion and tenure of employment, the plaintiff initially must establish a prima facie case of discrimination before the burden of producing evidence shifts to the defendants. *James v. Stockham Valves & Fittings Co.*, 394 F.Supp. 434 (N.D.Ala.1975).

3. The general standard for establishing a prima facie case of employment discrimination in federal court under Title VII, or 42 U.S.C. §§ 1981, 1983, in past years has been simply couched in terms of impact. However, as to public bodies, this view was recently dispelled by the Supreme Court in *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). In examining the adverse racial impact of the entrance exam given by the Washington, D.C. police department, the Court held that a showing of intent was necessary to make out a prima facie case against a local government. It is important to note that the racial impact of the entrance exam in this case was challenged solely on Constitutional grounds under 42 U.S.C. § 1981. Further applications of the Supreme Court's standard of intent rather than impact are found in *Austin Independent School District v. United States*, 429 U.S. 990, 97 S.Ct. 517, 50 L.Ed.2d 603 (1977); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

4. As of this date, *Harrington v. Vandalia-Butler Board of Education*, 418 F.Supp. 603 (S.D.Ohio 1976), is the only decision addressing the issue of whether the intent standard of *Washington v. Davis, supra,* should be applied in cases brought against state and local governments under Title VII. In that case, the federal district court in Ohio held that a female teacher of girls' physical education was not required to prove intentional acts of discrimination in order to recover under Title VII of the Civil Rights Act for disparity of working conditions. In stating simply that the plaintiff did not have to prove intentional acts of discrimination on the part of the defendants, the court failed to explicitly define an appropriate standard to be followed under Title VII. Instead, it completely ignored a genuine analysis of the facts and legal concepts, and casually stated that there was nothing in *Washington v. Davis, supra,* to support the proposition that the plaintiff (in the *Harrington* case) must prove intentional acts of discrimination in order to recover under Title VII. However, there is nothing in *Washington* which supports the premise that the plaintiff does not have to prove intentional acts of discrimination in order to recover under Title VII. The court in *Harrington* attempted to support its ruling by circuitously reasoning that *Washington* reaffirmed the decision of *Griggs v. Duke Power Company*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

To the contrary, the Supreme Court, in commenting on the standard to be applied under Title VII, stated simply:

"We have never held that the Constitutional standard for adjudicating claims of invidious racial discrimination is identical to the standards applicable under Title VII, and we decline to do so today." *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597, 607 (1977).

Moreover, the court in *Harrington* attempted to support its ruling by incorrectly asserting that *Washington v. Davis, supra,* reaffirmed the decision of *Griggs v. Duke Power Company, supra.* In quoting language from *Griggs*, i.e., "Congress directed

the thrust of the Act to the consequences of employment practices, not simply the motivation," 401 U.S. at 432, 91 S.Ct. at 854, the court in *Harrington* misled the reader to believe that the Supreme Court had included the above quote in its opinion of *Washington v. Davis, supra*. To the contrary, the Supreme Court made no such statement in *Washington*, nor did it clearly state that the decision of *Griggs v. Duke Power Company, supra*, was reaffirmed.

5. Whether the extension of Title VII to state and local government employment means that impact will not suffice and intent is currently the factor, is decidedly an open question. It hinges upon what Constitutional grant of power Congress has relied upon in extending the coverage of Title VII over state and local governments. If Congress is seen, as in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), to have extended Title VII in implementation of the fourteenth amendment, no more stringent standard would be appropriate than that for which the fourteenth amendment calls, i.e., intent. If Congress is alternatively assumed to have acted in the exercise of its power to regulate interstate commerce, one comes to the Supreme Court's decision in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), in which the Court struck down an attempt by Congress to regulate employment decisions of state and local governments under the commerce clause powers of Congress. Without the commerce clause as an appropriate alternative basis, it would appear that Congress's extension of Title VII to state and local governments cannot supplant the intent standard of *Washington v. Davis, supra*, with the more stringent impact standard of *Griggs v. Duke Power Company, supra*.

In view of this analysis, this court believes that the intent standard, i.e., that there must be proof of discriminatory racial purpose as in *Washington v. Davis, supra*, should be applied in civil rights litigation brought under Title VII (or 42 U.S.C. § 1981). The Supreme Court held in *Fitzpatrick, supra*, 427 U.S. at 453, 96 S.Ct.

at 2670, 49 L.Ed.2d at 620, that the authority for the 1972 amendment extending Title VII to state and local governments was the fourteenth amendment:

"There is no dispute that in enacting the 1972 amendments to Title VII to extend coverage to the states as employers, Congress exercised its powers under section five of the fourteenth amendment." Page 453, 96 S.Ct. page 2670, 49 L.Ed.2d page 620 note 9.

Therefore, it is simple logic that a statute can be no broader than its Constitutional base. Consequently, since the extension of Title VII to state and local government rests upon the fourteenth amendment, the statute cannot be any broader than the Constitutional authority upon which it is based. It follows that in Title VII cases against a state or local government the statute is to be construed in accordance with the Constitutional test adopted by the Court in *Washington, supra*; i.e., there must be proof of discriminatory racial purpose.

6. Statistical evidence in Title VII cases in this circuit has often been given critical weight. *Johnson v. Goodyear Tire & Rubber Co.*, 491 F.2d 1364 (5th Cir. 1974). In *Ochoa v. Monsanto Company*, 473 F.2d 318, 319 (5th Cir. 1973), the court made clear that it would "accord statistical evidence great and ofttimes decisive weight." In *Rowe v. General Motors Corp.*, 457 F.2d 348, 358 (5th Cir. 1972), it was said that statistics have "critical, if not decisive significance," certainly in putting on the employer the burden of justifying any apparent disparity. In *United States v. Hayes International Corp.*, 456 F.2d 112, 120 (5th Cir. 1972), the court commented that "these lopsided ratios are not conclusive proof of past or present discriminatory hiring practices; however, they do present a prima facie case." In the case of *United States v. Jacksonville Terminal Company*, 451 F.2d 418, 441 (5th Cir. 1971), the court held that "although the statistics do not establish a prima facie case of discrimination . . . absent explanatory evidence in the testimony, the statistics indicated that officials

have impliedly equated job classifications with race." In light of the factual situation present in this case, as evidenced by statistical comparisons and exhibits, the court finds an inference of racial discrimination from the statistics and, consequently, that the burden of going forward has shifted to the defendants.

7. The plaintiff having established a prima facie case of discrimination, the burden of producing evidence shifts to the defendants. *James v. Stockham Valves & Fittings Co., supra; Buckner v. Goodyear Tire & Rubber Co.,* 339 F.Supp. 1108 (N.D. Ala.1972), aff'd per curiam 476 F.2d 1287 (5th Cir. 1973). Although the plaintiffs have established a prima facie case through the use of statistical comparisons and exhibits, the inferences raised from the statistics are not conclusive proof of discrimination. *James v. Stockham Valves & Fittings Co., supra,* at page 492; *Ochoa v. Monsanto Company, supra; Rowe v. General Motors Corp.,* 457 F.2d 348 (5th Cir. 1972). The weight to be given any inferences raised by statistics varies according to the correctness, completeness, and comprehensiveness of the figures proffered. *United States v. Jacksonville Terminal Co.,* 451 F.2d 418 (5th Cir. 1971); *Hester v. Southern Railway,* 497 F.2d 1374 (5th Cir. 1974). Statistical evidence, while obviously probative, does not relieve the court of its obligation to determine whether plaintiffs have established the truth of their allegations. *James v. Stockham Valves & Fittings Co., supra,* at page 492. The defendants may overcome a prima facie case by producing credible, contradictory evidence, but are not required to produce a preponderance of such evidence. The risk of nonpersuasion remains at all times on the plaintiffs. *James v. Stockham Valves & Fittings Co., supra,* at page 492; *Ochoa v. Monsanto Company, supra.*

8. Title VII of the Civil Rights Act of 1964, as amended, is not retroactive in effect and does not seek to punish an employer whose employment practices prior to the effective date of said Act, had they continued, may have violated its provisions. The Act, however, proscribes employment practices to the extent they perpetuate the effects of past discrimination. *James v. Stockham Valves & Fittings Co., supra,* at page 493; *United States v. St. Louis-San Francisco Rwy.,* 464 F.2d 301 (8th Cir. 1972), cert. denied, 409 U.S. 1116, 93 S.Ct. 913, 34 L.Ed.2d 700 (1973).

9. The defendants in a civil rights case, by introducing evidence which explains their employment practices on the basis of legitimate, nonracial grounds, may refute any inferences of discrimination raised by the plaintiffs. *James v. Stockham Valves & Fittings Co., supra,* at page 493; *Buckner v. Goodyear Tire & Rubber Co., supra.* Once defendants have adequately refuted any inferences raised, the burden shifts back to the plaintiffs to come forward with further specific evidence of the discriminatory impact of the challenged practices. Plaintiffs have the burden of augmenting their statistics with other evidence showing that whites received job assignments denied blacks, that jobs were available when blacks applied, and that blacks were passed over in favor of whites with equal or inferior qualifications. *James v. Stockham Valves & Fittings Co., supra,* at page 493; *United States v. Jacksonville Terminal Co., supra.* Further, as the court pointed out in *James, supra,* where plaintiffs failed to assume this additional burden, they also failed to carry their burden of proof on the case.

10. As pointed out above, the court finds in the case at bar that the plaintiffs have established a prima facie case through the use of statistical comparisons and exhibits, thus shifting the burden of producing contradictory evidence to the defendants. The defendants have met this burden by producing credible, contradictory evidence; the court finds that the defendants' evidence has refuted any inference of a discriminatory racial intent on the part of the defendants; thus, shifting the burden back to the plaintiffs to come forward with further specific evidence of the discriminatory intent of the challenged practices. The plaintiffs have not met this additional burden. Therefore, with respect to the

class allegations presented to the court the court finds that it must deny the claims for relief on behalf of the class because of their failure to prove the requisite intent, as set out above.

11. Alternatively, the court finds that, based upon the specific facts of this case, the defendants employ justifiable job-related tests in the appropriate instances and that the defendants "lean over backwards" in an attempt to hire and promote black persons in the public works department of the City of Anniston. When the defendants adequately refuted any inferences raised by the plaintiffs' statistical analyses, the burden shifted back to the plaintiffs to come forward with further specific evidence of discriminatory impact on the challenged practices. Under the impact test, plaintiffs have the burden of augmenting their statistics with other evidence showing that whites received job assignments denied blacks, that jobs were available when blacks applied, and that blacks were passed over in favor of whites with equal or inferior qualifications. *James v. Stockham Valves & Fittings Co., supra,* at page 493. *Buckner v. Goodyear Tire & Rubber Co., supra.* The plaintiffs did not meet this additional burden. Therefore, the court is compelled to deny the plaintiff class the relief it seeks.

12. Turning now to the individual complaint of plaintiff Mack Scott, the court finds from the evidence that Scott's termination of employment with the City, which was upheld by the Civil Service Board, was not based upon racially discriminatory reasons. Title VII makes it an unlawful employment practice for an employer to fail or refuse to hire or to discharge an employee because of his race, color, religion, sex, or national origin. Whether a discharge is based on race or color is a matter of evidence. The burden of proof rests on the plaintiff, but the burden can be shifted by a prima facie case. In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court stated as follows:

"The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677.

The *McDonnell Douglas Corp.* case also stands for the proposition that proof of misconduct does not alone justify discharge in the face of proof that members of a different race have been treated differently. In the present case, the court finds that plaintiff Mack Scott was dismissed on the basis of misconduct. There has been no proof presented to the court that members of a different race have been treated differently in similar circumstances. To the contrary, several persons testified that the Civil Service Board handled appeals in employment discharge cases in a nondiscriminatory manner. Indeed, Civil Service Board member Ellis Greer, a black, testified that in his opinion the Board does not discriminate against whites or blacks and that in disciplinary proceedings before the Board, "we try to base it on the merits and not the color." (R. p. 331). Accordingly, the court denies the relief prayed for by the individual plaintiff Mack Scott.

13. The court specifically finds that the dismissal of Earnest Hall was not based upon racial considerations.

14. In accordance with the foregoing Findings of Fact and Conclusions of Law, this court finds that the plaintiff class and the individual plaintiffs are not entitled to relief under the Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e, et seq. Judgment will be entered accordingly.